The United Porto Rican Bank y The Baltimore Trust Company, peticionarios, *v.* La Corte de Distrito de Humacao, Hon. R. Arjona Siaca, Juez, et al., demandados.

No. 892.—*Sometido:* Marzo 6, 1933. *Resuelto:* Marzo 31, 1933.

* Nota: Véase el prefacio.

*Walter L. Newsom, Jr.,* abogado de las peticionarias; *Henry G. Molina,* abogado de los interventores Carmen Fuertes *et al.; Arturo Aponte,* abogado de "Garzot & Fuertes", también interventora.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Un arrendamiento a largo plazo, o dos o más arrendamientos similares, proveían que la arrendataria pagaría los cánones trimestralmente y las contribuciones sobre la finca arrendada. The United Porto Rican Bank celebró un contrato de refacción agrícola con la arrendataria. La escritura de arrendamiento disponía que los arrendadores notificarían con treinta días de anticipación al banco antes de proceder contra la arrendataria en caso de incumplimiento y extendía al banco el privilegio de evitar las consecuencias de tal incumplimiento mediante el pago de los plazos insolutos dentro del período precitado.

La arrendataria otorgó pagarés por dinero anticipádole por el banco. Algunos de estos pagarés fueron endosados por el banco a la Baltimore Trust Company. Posteriormente esta compañía y el banco incoaron acción en cobro de estos pagarés contra la arrendataria. La demanda contenía una alegación relativa a la existencia de un gravamen por refac-

ción agrícola sobre unas dos mil cuerdas de caña de azúcar en estado de crecimiento y sobre el azúcar que las mismas produjesen. Contenía otra alegación por información y creencia respecto a la continuada existencia del contrato de arrendamiento. Se hizo a los arrendadores partes demandadas. Se solicitaba la ejecución del gravamen, la venta de la caña o del azúcar que la misma produjera y que se dictara cualquier otro decreto que correspondiera a los derechos de los arrendadores.

Los demandantes solicitaron entonces el nombramiento de un síndico. Después de hacer una reseña de las alegaciones de su demanda, ellos adujeron en su petición lo siguiente:

"" *       *       *       *       *       *       *

"4. Que dichas fincas las tenía arrendadas 'Garzot & Fuertes de sus respectivos dueños al momento de celebrarse el referido contrato de refacción entre The United Porto Rican Bank y 'Garzot & Fuertes', y bajo información y creencia se alega que dichos contratos todavía están vigentes, no habiendo sido parte las demandantes en ninguna rescisión de dichos contratos, ni por convenio ni por procedimiento judicial.

"" *       *       *       *       *       *       *

"7. Que desde principios del mes de noviembre de 1932 ni la demandada 'Garzot & Fuertes', ni los dueños de las fincas, ni ninguna otra persona, han prestado atención al cultivo y administración de dichas plantaciones de cañas, encontrándose las mismas en un estado de abandono desde dicha fecha hasta la actualidad, y como resultado de dicha falta de atención y cultivo, dichas cañas han sufrido en su valor y continúan sufriendo, hallándose dichas plantaciones en el día de hoy notablemente necesitadas de inmediata atención y cultivo para evitar su pérdida en casi la totalidad de su valor.

"8. Que la demandada 'Garzot & Fuertes' es insolvente y no tiene fondos, recursos ni equipo suficiente necesarios para prestar la debida atención al cultivo y administración de dichas cañas, ni tampoco puede dicha demandada levantar los fondos ni conseguir los necesarios recursos y equipo al efecto, ni ha demostrado intención alguna de prestar la debida atención al cultivo y administración de las mismas; y se alega bajo información y creencia, que los dueños de las respectivas fincas tampoco pueden prestar la debida atención al cultivo y administración de dichas cañas por falta de fondos, recursos y equipo

necesarios, y que siendo muchos de los dueños mujeres, menores de edad y personas sin experiencia y conocimientos en negocios agrícolas, tampoco se hallan competentes y capacitados para afrontar dicho cultivo y administración.

''9. Que varias personas, pretendiendo tener la autoridad correspondiente, han prohibido a la demandante, The United Porto Rican Bank, entrar en dichas fincas para encargarse del cultivo y administración de dichas cañas para evitar su pérdida, aunque dicha demandante está y siempre ha estado dispuesta a entrar en las fincas y prestar la debida atención al cultivo y administración de dichas cañas sin perjuicio a la demandada ni a los dueños de dichas fincas, y dicha demandante, The United Porto Rican Bank está, y siempre ha estado, dispuesta a pagar a los dueños de dichas fincas la parte proporcional de los cánones de arrendamiento correspondiente a la parte de dichas fincas que se halla sembrada en cañas y que sea necesaria para dichos cultivo y administración, desde la fecha de la entrada de dicha demandante, o desde la fecha de la entrada del síndico cuyo nombramiento se solicita en esta solicitud.

''10. Que según la cláusula 'K' de la referida escritura No. 33 de 29 de julio de 1931, otorgada ante el notario Walter L. Newsom, Jr., en cuya escritura está consignado ·el referido contrato de refacción, la demandante The United Porto Rican Bank, y/o los tenedores de los pagarés refaccionarios que se expidieron de acuerdo con los términos de dicho contrato y en que se basa la reclamación de este litigio, tienen derecho, en caso de que se dejaren de pagar dichos pagarés en el día de su vencimiento, o sea el día 30 de junio de 1932, a entrar en posesión de las referidas plantaciones de cañas para hacerse cargo de la administración y cultivo de las mismas, o el derecho de proceder judicialmente al cobro de dichos pagarés y obtener el nombramiento de un síndico para tomar posesión de dichas plantaciones de cañas y administrarlas de acuerdo con las órdenes de la corte, sin prestar fianza para conseguir el nombramiento de tal síndico.

''11. Que según el artículo 182 del Código de Enjuiciamiento Civil vigente, un síndico podrá ser nombrado por la corte en que un pleito esté pendiente en una acción entablada por un acreedor para someter a su reclamación cualesquiera bienes o fondos, cuyo derecho o interés en dichos bienes o fondos o producto de los mismos sea presumible, siempre que· se probare que los bienes o fondos corren peligro de perderse, trasladarse o sufrir daños de consideración, como ha ocurrido y está ocurriendo en este caso.

''12. Que bajo información y creencia se alega que la demandada 'Garzot & Fuertes' ha faltado al pago de cánones de arrendamiento a

los dueños de las referidas fincas y que no se han pagado las contribuciones sobre dichas fincas por considerable tiempo, y que debido a la falta de pago de dichos cánones, los dueños no están recibiendo ingresos algunos de sus propiedades, cuya circunstancia es perjudicial a dichos dueños, y mediante el nombramiento de un síndico esta situación será aliviada desde la fecha de la entrada de dicho síndico.

"13. Que el nombramiento de un síndico en este caso será de gran beneficio a todas las partes y no perjudica en manera alguna cualesquiera derechos o preferencias o gravámenes que alguna de las partes tenga o pretenda tener, toda vez que dentro de este pleito todas dichas cuestiones de preferencia pueden resolverse dentro de esta sindicatura, y toda vez que el producto de la sindicatura se depositará en esta Corte pendiente de dichas resoluciones, y por lo tanto, el nombramiento de dicho síndico tendrá el efecto de evitar la posibilidad de una multiplicidad de pleitos.

"14. Que si esta corte accede a esta solicitud y en su virtud nombra un síndico aceptable a las partes demandantes, dichas partes pueden asegurar que el síndico, mediante los correspondientes certificados de sindicatura puede levantar los fondos necesarios para prestar la debida atención al cultivo, administración y recolección de dichas cañas.

"16. Que las demandantes, en su carácter de acreedores refaccionarios, tienen un gravamen, interés y derecho sobre y en las referidas plantaciones, por un valor en exceso aún del valor estimado de dichas plantaciones de cañas."

Se solicitaba el nombramiento de un síndico "para que éste se posesione inmediatamente de las plantaciones de cañas ya referidas y la parte de las referidas fincas necesaria para su administración, y que cuide, cultive, administre, recolecte y haga moler las referidas plantaciones de cañas, y de acuerdo con las órdenes de esta corte venda los azúcares producidos por dichas cañas, hasta tanto se termine definitivamente este litigio, a fin de que lo que produzcan las referidas plantaciones de cañas se aplique en la forma que disponga esta Hon. Corte y para atender los gravámenes preferentes que pesan sobre dichas plantaciones y en cumplimiento de cualquier sentencia u orden que se dicte en este caso, solicitando igualmente que esta corte confiera y conceda al referido síndico todas las facultades que a su juicio fueren

procedentes y necesarias para el debido y eficiente funcionamiento de esta sindicatura y la debida protección de los bienes envueltos en la misma, así como la debida protección de los derechos de las partes envueltas en este litigio, con poderes para emplear, dirigir y despedir empleados que sean necesarios, comprar materiales, alquilar equipo, coger dinero a préstamo mediante la expedición de los certificados de sindicatura que pueda autorizar esta Hon. Corte, celebrar o adoptar contratos y convenios sobre transporte y molienda de cañas, y en general, poderes y facultades para hacer todo lo necesario en su administración, con la obligación de hacer los informes que esta corte ordene, y rendir cuentas de su administración, todo de acuerdo con las órdenes de esta corte y la práctica que se sigue en tales casos.''

Los arrendadores en su contestación negaron la existencia de cualquier gravamen en favor del banco y alegaron que todo gravamen que el banco pudiera tener sobre las plantaciones de caña o sobre el azúcar que las mismas produjeren, había caducado. Negaron la existencia de los arrendamientos al tiempo en que los demandantes radicaron su demanda, o en cualquier época posterior al 1°. de septiembre de 1932, fecha en que se habían rescindido los predichos arrendamientos en lo que a los arrendadores y sus propiedades concernía. Alegaron además que a partir de la fecha últimamente mencionada se hallaban en posesión material de dichas fincas, así como de la caña que se cultivaba en las mismas. Se solicitaba se desestimara el recurso en lo que a ellos se refería.

En una contrademanda los arrendadores alegaron que la arrendataria y el banco habían dejado de pagar ciertos cánones de arrendamiento y determinadas contribuciones sobre las fincas arrendadas; que como resultado de haberse dejado de satisfacer las contribuciones, el Tesorero de Puerto Rico había embargado esas fincas y estaba anunciando la venta de las mismas; que cada uno de los contratos de arrendamiento disponía: ''que para que la corporación arrendataria incurra en mora es necesario que haya dejado de pagar dos tri-

mestres del arriendo dentro de los treinta días después de vencido el segundo de los mismos, en cuyo caso solamente será que podrán los arrendadores proceder judicialmente contra la corporación arrendataria; pero antes es indispensable que los arrendadores notifiquen su intención por escrito a The United Porto Rican Bank, por lo menos con un mes de antelación dentro de cuyo plazo se podrán todavía pagar los trimestres en descubierto''; que los arrendadores habían notificado al banco que la arrendataria había dejado de pagar las contribuciones y que como dichos cánones y contribuciones no habían sido pagados ni por la arrendataria ni por el banco, y toda vez que la arrendataria era insolvente, dichos arrendamientos habían quedado rescindidos de común acuerdo entre los arrendadores y la arrendataria con fecha 1°. de septiembre de 1932, y que los arrendadores habían tomado posesión material y absoluta de sus fincas respectivas, fecha desde la cual las ameritadas propiedades habían estado en posesión única y exclusiva de los aludidos arrendadores; que en septiembre 1, 1932, en que se dió posesión de las citadas fincas a los dueños de las mismas, habían en ellas ciertas plantaciones de caña de azúcar que no estaban aún en estado de madurez; que no habiéndose cumplido los contratos de arrendamiento por la arrendataria y habiéndose rescindido los mismos y habiéndose devuelto las fincas a sus dueños, éstos tomaron posesión de ellas como dueños únicos y exclusivos de dichas plantaciones de caña, así como del terreno y sus anexos; que a pesar de no haber sido satisfechos dichos cánones y contribuciones, el banco alegaba tener un gravamen refaccionario sobre dichas plantaciones de caña y que el citado gravamen era preferente al de El Pueblo de Puerto Rico por el importe de las tres últimas anualidades y la corriente no pagada; que el banco alegaba para sí y para otros el derecho a apropiarse de dichas plantaciones de caña y del azúcar que las mismas produjeren sin obligación alguna de pagar los cánones vencidos e insolutos hasta el 1°. de septiembre de 1932; que el banco había reconocido su obligación de

pagar a los contrademandantes el valor razonable del uso de aquellos terrenos ocupados por las plantaciones de caña o de los que se utilizaren para el cultivo o recolección de las mismas, pero se había negado a convenir con los contrademandantes respecto a cuál sería dicho valor razonable, así como a pagar a los contrademandantes cualquier suma por el valor razonable del uso y ocupación de sus fincas durante el cultivo o recolección de dichas cañas; que como consecuencia del referido derecho o gravamen alegado por el banco, a los contrademandantes les había sido imposible levantar fondos para la recolección de dichas cañas, que estaban maduras y en condiciones de ser molidas; y que si no eran molidas inmediatamente los contrademandantes sufrirían graves daños. Se pedía se dictara un decreto así:

"(1) Que los contrademandantes son los únicos o exclusivos dueños de las plantaciones de cañas existentes en sus respectivas fincas, descritas en el párrafo dos de la demanda enmendada y en los Exhibits 'A' y 'B', y como tales dueños tienen derecho a recibir el valor total de los azúcares que las mismas puedan producir en la zafra de 1933 y venideras;

"(2) Que no existe gravamen (*lien*) o derecho preferente alguno a favor de The United Porto Rican Bank, o a favor de cualquiera otra persona, corporación o entidad sobre o con relación a las plantaciones de cañas existentes en las fincas de los demandados que se describen en el párrafo segundo de la contrademanda, con excepción del gravamen (*lien*) o derecho preferente a favor de El Pueblo de Puerto Rico para el pago de contribuciones impuestas con relación a cada una de dichas propiedades;

"(3) Que en tanto se resuelve por esta Hon. Corte a quien corresponden dichas cañas y los derechos de las partes con relación a las mismas, se nombre un síndico (*receiver*) para que se posesione inmediatamente de dichas plantaciones de cañas con el fin de recolectarlas y conseguir que se muelan y vender los azúcares producidos por las mismas en la forma que disponga esta Hon. Corte con poderes para emplear, dirigir y despedir los empleados que sean necesarios, comprar o alquilar elementos de recolección, materiales y equipos, y de tomar dinero a préstamo mediante la expedición de certificados de sindicatura (*receiver's certificates*) con instrucciones de levantar fondos inmediatamente con tales certificados para pagar todas las con-

tribuciones adeudadas o vencidas contra dichas fincas; de celebrar contratos sobre transporte y molienda de cañas y en general con todos los derechos y facultades inherentes para la debida administración y recolección de dichas cañas y la venta de dichos azúcares, todo con la obligación de hacer los informes que esta Corte ordene, y rendir cuentas de su administración;

"(4) Conceder cualquier otro remedio que estime propio, y . . ."

Al mismo tiempo los contrademandantes radicaron una petición solicitando el nombramiento de un síndico. Ellos hicieron que su contestación y contrademanda formaran parte de la petición. En ésta los contrademandantes alegaron que si bien era cierto que se hallaban en la posesión física de sus respectivas propiedades y de las plantaciones de caña, el banco alegaba e insistía en que ellos no disfrutaban tal posesión, que no eran dueños de la caña de azúcar, y que tenía un crédito refaccionario sobre dicha caña superior a cualquier derecho poseído por los contrademandantes, ya fuere como dueños del terreno o como dueños de la caña, y superior también al gravamen de El Pueblo de Puerto Rico por el importe de las contribuciones de las tres últimas anualidades y la corriente no pagada; que como resultado de estas reclamaciones hechas por el banco y sus cesionarios, a los peticionarios les había sido imposible obtener dinero alguno sobre dicha finca para el pago de las contribuciones o para la recolección de la caña; que el Tesorero había embargado las fincas de los peticionarios y había anunciado una subasta para el 20 de febrero, a menos que se nombrara un síndico con facultad para tomar dinero a préstamo mediante la expedición de certificados de sindicatura, a fin de pagar las aludidas contribuciones y los gastos en que se incurriere; y por información y creencia alegaban que el banco y/o sus cesionarios tenía la intención de adquirir directa o indirectamente en la subasta las fincas de los peticionarios.

El día de la vista en la corte de distrito, o sea el 17 de febrero, después de declararse sin lugar una moción para que se pospusiera la vista, los demandantes retiraron su petición sobre nombramiento de síndico y excepcionaron la petición

de los contrademandantes. La vista entonces prosiguió sobre la petición de los contrademandantes y la excepción interpuesta a la misma, y el juez de distrito, después de oír las argumentaciones de los letrados de ambas partes, nombró un síndico. La parte dispositiva de su orden lee en parte como sigue:

"Se decreta y ordena, además, que el referido síndico tenga las siguientes facultades: para cuidar, cultivar, administrar, recolectar y hacer moler las plantaciones de cañas existentes en las referidas fincas, y al efecto para que celebre los contratos que sean necesarios sobre molienda y transporte de dichas cañas.

"Se decreta y ordena, además, que dicho síndico tendrá y por la presente se le confieren facultades para tomar dinero a préstamo y expedir y entregar como evidencia de tales préstamos certificados de sindicatura (*receiver's certificates*), los cuales habrán de ser recogidos o satisfechos por el síndico de los primeros fondos que obtenga como resultado de la venta de los azúcares producidos por dichas cañas, con cuyos dineros o fondos tomados a préstamo el síndico habrá de satisfacer en primer lugar todos los créditos a favor de El Pueblo de Puerto Rico que estuvieren vencidos por el importe de las tres últimas anualidades de contribuciones impuestas sobre todas y cada una de dichas fincas y por la corriente no pagada, así como los gastos indispensables para atender a la administración, cultivo, cuido, y recolección de dichas plantaciones de cañas.

"Y se autoriza, además, al síndico a celebrar con el Tesorero de Puerto Rico un convenio, si es posible, para dejar sin efecto la subasta de las fincas de los contrademandantes que está señalada para el 20 del corriente, bajo la condición de que todas las contribuciones adeudadas serán pagadas por el síndico con los primeros fondos que entren en su poder."

La diferencia esencial existente entre los poderes aquí conferidos al síndico y los enumerados en la súplica de la petición de la parte demandante para que se nombrara un síndico, se halla en la disposición relativa al pago de las contribuciones atrasadas y en la autorización para celebrar un contrato con el Tesorero de Puerto Rico sobre tal pago. Podría admitirse que los demandantes estaban en el ejercicio de sus derechos al retirar su petición para el nombramiento

de un síndico y al oponerse a la petición de los contra-
demandantes. Empero, la petición de la parte demandante
no quedó extinguida. Subsistía como un documento del caso.
Los demandantes aun estaban obligados por las admisiones
y declaraciones de hecho en ella contenidas. Los contrade-
mandantes tenían derecho a asumir que su petición sería in-
terpretada y considerada a la luz de aquellas alegaciones in-
controvertidas que contuviera la petición de los demandantes.

Hemos leído la mayoría de los casos citados en apoyo del
texto en Clark on Receivers, tomo 1, pág. 125; 23 R. C. L.
15, sección 9; y 53 C. J. 30, sección 15, en que se fundan los
peticionarios en el presente recurso de *certiorari*. No tene-
mos acceso a 19 N. J. Eq. El caso presentado por los con-
trademandantes es excepcional. No cae dentro del razona-
miento o del principio de las decisiones que sostienen que
bienes en poder del dueño no serán puestos en manos de un
síndico. En el presente caso la posesión de los contrade-
mandantes era fútil, ineficaz y vana. Ellos estaban en po-
sesión de propiedad susceptible de deterioro, o sea caña de
azúcar lista para ser molida, que valía muchos miles de dó-
lares y que carecería de valor a no ser que se cortara y mo-
liera prontamente. Debido al procedimiento iniciado por los
demandantes, las manos de los contrademandantes quedaron
atadas. Se hallaban tan indefensos ante esta inminente pér-
dida como lo hubiesen estado si la propiedad se hubiera ha-
llado en poder de los contrademandados y estuviera próxima
a ser destruída o disipada por ellos. Tal posesión por parte
de los contrademandantes no era óbice para el nombramiento
de un síndico, si este caso, fuera de la cuestión relativa a la
posesión, era uno adecuado para ello.

El artículo 182 del Código de Enjuiciamiento Civil auto-
riza el nombramiento de un síndico en una acción entablada
"por un acreedor para someter a su reclamación cualesquiera
bienes o fondos, o entre socios, u otras personas que en co-
mún posean o estén interesadas en bienes o fondos, mediante
solicitud del demandante o de cualquiera parte, cuyo derecho

o interés en dichos bienes o fondos o productos de los mismos sea presumible, siempre que se probare que los bienes o fondos corren peligro de perderse, trasladarse o sufrir daños de consideración." También autoriza tal nombramiento "en todos los demás casos en que como hasta el presente se han nombrado síndicos, conforme a los usos de las cortes de equidad." En el presente caso los demandantes son acreedores que han incoado un procedimiento para que ciertas cosechas estén sujetas a su reclamación. Hicieron partes demandadas a los dueños del terreno. Aun en la teoría de los demandantes de que existía un arrendamiento, estos dueños, como arrendadores, tienen un gravamen sobre la caña de azúcar para garantizarles el pago de los cánones, el que de conformidad con los términos del contrato de arrendamiento mismo incluye también las contribuciones. El artículo 182, supra, autoriza el nombramiento de un síndico, bien a solicitud de un demandante "o de cualquiera parte, cuyo derecho o interés en dichos bienes o fondos o productos de los mismos sea presumible, siempre que se probare que los bienes o fondos corren peligro de perderse, trasladarse o sufrir daños de consideración." Los demandantes mismos alegan que la plantación de caña no ha recibido cuido alguno desde noviembre, que la arrendataria se halla insolvente y no está en condiciones de cultivar o recolectar la caña, que los arrendadores y dueños del terreno están igualmente impedidos de actuar y que a menos que se haga algo para remediar esta situación inmediatamente el resultado será una pérdida casi total de la cosecha.

Los dueños del terreno no son solamente demandados con un interés presumible en la cosecha, como arrendadores, (si la teoría de los demandantes es correcta), sino que también son contrademandantes. En este carácter, ellos alegan tener, no un mero interés en las cosechas, sino un derecho exclusivo de propiedad. Dicen que el arrendamiento quedó rescindido mediante convenio celebrado entre los arrendadores y la arrendataria, después de haberse notificado al banco que

la arrendataria había dejado de pagar los cánones de arrendamiento y que el banco y sus cesionarios habían perdido cualquier gravamen que hubiesen podido tener sobre la cosecha. No obstante, ellos alegan que en vista de la actitud y actuación del banco al sostener su derecho, a ellos les ha sido imposible levantar fondos para recolectar la caña sobre la cual los demandantes alegaron tener un gravamen, y que si no se corta y muele esta caña inmediatamente sufrirán graves perjuicios. La sección 3 de la ley sobre contratos de refacción agrícola, según fué enmendada en 1925 (Leyes de ese año, pág. 347), dispone que el contrato de refacción agrícola celebrado con un arrendatario no podrá extenderse más allá del término y condiciones del arrendamiento, mas dice que "En caso de que el arrendatario o usufructuario por cualquier título no cumpla sus obligaciones para con e¹ dueño o representante de la propiedad, el acreedor refaccionario podrá, al tener conocimiento de ello, cumplir tales obligaciones por cuenta del deudor y con cargo al crédito de refacción agrícola." La teoría de los contrademandantes es que el banco renunció o perdió su gravamen por haber dejado de pagar las rentas al ser notificado del incumplimiento de la arrendataria, dejando así de restaurar el *status quo,* tal como lo hizo Molina en el caso de *Molina* v. *Muñoz,* 31 F. (2d) 727.

■ Conforme hemos demostrado, los contrademandantes también alegan la existencia de un gravamen por concepto de contribuciones superior a cualquier gravamen que puedan tener los demandantes sobre la caña de azúcar en cuestión. El artículo 291 del Código Político (Compilación de 1911, sección 2943) exime de tributación "(*h*) Los frutos por cosechar y productos de la tierra que sean precisamente propiedad del productor y mientras estén en poder de éste." Según demuestra el contexto y especialmente el inciso (*m*), esto no significa necesariamente que las cosechas, como parte del terreno que las produce, no estén sujetas a un gravamen por concepto de contribuciones sobre el terreno. La sección 4 de

la Ley sobre contratos de refacción agrícola, según fué enmendada en 1925 (leyes de ese año, págs. 347, 349), da al crédito de refacción agrícola preferencia sobre todos los créditos posteriores "excepción hecha de los créditos por contribuciones a favor de El Pueblo de Puerto Rico, según lo dispone la ley." La sección 15 de la misma ley, según fué aprobada en 1910, enmendó el artículo 1824 del Código Civil (hoy artículo 1823 de la edición de 1930), en tal forma que el crédito por refacción agrícola estuviese subordinado solamente al crédito por contribuciones, pero de todos modos supeditado a dicho crédito.

Los letrados de los contrademandantes no están de acuerdo con la teoría de una empresa común, conforme se expone en el caso de *Molina* v. *Muñoz,* supra, pero alegan que aun si fuera correcta el *dictum* en dicho caso y fuese aplicable a los hechos del presente, subsiste la cuestión de quién debe pagar las contribuciones.

No podemos convenir con los letrados de los demandantes, peticionarios en el presente recurso, en que el nombramiento de un síndico era nulo por falta de jurisdicción. Nos inclinamos a convenir con los letrados de los contrademandantes en que las cosechas están sujetas al gravamen por contribuciones y que por lo menos parte de las contribuciones puede muy bien ser pagada por el síndico del producto de la cosecha. Evidentemente, la orden de la corte debió haber sido más específica en algunos respectos, pero los letrados de los contrademandantes dicen que este defecto ha sido subsanado por un contrato celebrado por el síndico con el Tesorero de Puerto Rico. Quizá la corte de distrito debió haber ordenado solamente que el síndico pagara cierta parte de las contribuciones. Esta es cuestión que puede depender en parte de hechos y circunstancias que los autos no revelan. El auto de *certiorari* fué librado con el fin de determinar si la corte de distrito se excedió o no en sus facultades al nombrar un síndico. Otras cuestiones de menor importancia que no aparecen haber sido discutidas adecuadamente durante la vista

celebrada en la corte de distrito, pueden ser presentadas más ampliamente al juez de distrito y no es necesario resolverlas ahora.

*Debe anularse el auto expedido.*