Porto Rico Racing Corporation et al., Peticionarios, *v.* La Corte de Distrito de San Juan, Demandada.

Solicitud para que se expida un auto de *certiorari* dirigido a la Corte de Distrito de San Juan, Segundo Distrito, Hon. Manuel Rodríguez Serra, Juez.

No. 432.—Resuelto en marzo 7, 1924.

Sindicatura—Nombramiento de Síndico.—La facultad de nombrar síndico es muy delicada y debe ejercitarse con gran cautela y solamente cuando las circunstancias del caso exigen un remedio urgente o cuando la corte tenga motivos suficientes para creer que existe un peligro inminente de que pueda ocurrir una pérdida, para que no sea mayor el perjuicio que ocasione que lo que se trata de evitar; jamás debe hacerse uso de esa facultad en caso de duda ni cuando hay probabilidades de que su ejercicio ocasione injusticia o perjuicio a los derechos privados.

Los hechos están expresados en la opinión.

Abogados de los peticionarios: *Sres. M. Guerra, H. G. Molina* y *L. Feliú.*

Abogado de la parte contraria: *Sr. R. Rivera Zayas.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

Este es un procedimiento de *certiorari* para revisar la resolución de la Corte de Distrito de San Juan, Distrito Segundo, sobre nombramiento de un síndico *pendente lite.*

La corporación San Juan Racing & Sporting Club venía dedicándose de hace muchos años a la explotación de un hipódromo en el barrio de Santurce de esta ciudad de San Juan, P. R., habiendo llegado a tener una empresa próspera y remuneradora, y a fines de 1922 comenzó don Deogracias Viera la construcción de otro hipódromo en el vecino barrio de Hato Rey de Río Piedras que fué inaugurado el 6 de mayo de 1923 y surgió una competencia entre ambos hipódromos.

En abril de 1923 los diez accionistas de la San Juan Racing & Sporting Club, que a su vez son los únicos y sus directores, formaron otra nueva corporación con el nombre

de Porto Rico Racing Corporation que tiene como uno de sus fines explotar hipódromos y tomarlos en arrendamiento.

Desde que el Sr. Viera comenzó la construcción de su hipódromo el presidente de la San Juan Racing & Sporting Club empezó a tratar con él para comprarle o arrendarle el nuevo hipódromo cuyas gestiones no tuvieron éxito hasta después de cinco meses de competencia, y el día 21 de septiembre de 1923 se firmó una escritura pública por la cual don Deogracias Viera y su esposa dieron en arrendamiento su hipódromo Quintana Racing Park a la Porto Rico Racing Corporation hasta el 24 de mayo de 1926 por canon de $18,000 anuales, pagaderos por trimestres adelantados de $4,500 cada uno, y comprometiéndose a vendérselo por precio de $200,000 durante todo el término del arrendamiento; y la Porto Rico Racing Corporation se comprometió a pagar el canon expresado, a conservar el hipódromo y sus dependencias en buen estado, a admitir como accionista suyo al Sr. Viera, a no cambiarle el nombre al hipódromo del Sr. Viera, a no dar carreras en el hipódromo de Santurce, a pagar las contribuciones y un seguro de incendio y a cobrar por cuenta del Sr. Viera lo que le estaban adeudando los dueños de caballos; y la San Juan Racing & Sporting Club, que también concurrió al otorgamiento de la escritura, se obligó a destruir su hipódromo de Santurce y se constituyó en fiadora de todas las obligaciones contraídas por la Porto Rico Racing Corporation.

Poco más de un mes después de estar cumpliéndose ese contrato, y como consecuencia de él, de haber sido admitido el Sr. Viera como accionista de la Porto Rico Racing Corporation, de haber dejado la San Juan Racing & Sporting Club de dar carreras de caballos en su hipódromo de Santurce, de haber comenzado a destruírlo y de haber recibido el Sr. Viera el primer trimestre adelantado de arrendamiento, los esposos Viera presentaron demanda contra la

Porto Rico Racing Corporation y contra la San Juan Racing & Sporting Club para que le devolvieran su hipódromo Quintana Racing Park con todos los beneficios en él obtenidos por la Porto Rico Racing Corporation, fundándose en que el contrato de arrendamiento es nulo porque el propósito y voluntad de los demandantes al hacer el contrato fué que la San Juan Racing & Sporting Club, única competidora y con suficiente garantía, asumiese su cumplimiento y que sin su concurso no lo hubieran celebrado, y que para acreditar los presidentes de ambas corporaciones su representación en la escritura presentaron dos certificaciones falsas firmadas por sus respectivos secretarios haciendo constar la de la Porto Rico Racing Corporation que su presidente fue autorizado por acuerdo de 17 de septiembre de 1923 para tomar en arrendamiento el hipódromo Quintana Racing Park, habiendo sabido después los demandantes que esa corporación no celebró sesión en ese día ni tomó tal acuerdo; y que el presidente de la San Juan Racing & Sporting Club presentó otra certificación de otro acuerdo de sus directores, también de 17 de septiembre de 1923, en el que se le autorizaba para concurrir al otorgamiento de la escritura, para que la constituyera en fiadora del cumplimiento del contrato asegurando el pago de los cánones de arrendamiento y de las demás obligaciones contraídas por la Porto Rico Racing Corporation y a establecer como condición que no daría carreras de caballos en su hipódromo de Santurce, cuando lo cierto es, según han sabido posteriormente, que sólo fué autorizado para concurrir a la escritura y comprometerla a no dar carreras en su hipódromo durante la vigencia del contrato y que no fué autorizado para constituirla en fiadora, por cuyas falsas representaciones fué que los demandantes firmaron el contrato.

Radicada esa demanda los demandantes presentaron mo-

ción a la corte para que nombrara un síndico que se incautara del hipódromo Quintana Racing Park objeto del arrendamiento y lo maneje y lo explote mientras se termina el pleito, alegando para ello la radicación de su demanda de nulidad del contrato por los fundamentos en ella expresados y especialmente por la falta de consentimiento de los demandantes por haber sido inducidos a error para otorgarlo: la entrega que hicieron de su hipódromo: que éste está produciendo $2,500 de renta semanalmente: que según su información y creencia la Porto Rico Racing Corporation carece de recursos y bienes suficientes para responder de los beneficios que el hipódromo reporta por lo que ellos y el hipódromo mismo corren peligro de perderse o sufrir daños de consideración y que los demandantes carecen de otro recurso legal para protegerse.

Las corporaciones demandadas se opusieron a que se nombrara síndico alegando, entre otras cosas, que la moción en que se solicita ese nombramiento y la demanda principal no aducen hechos determinantes de causa de acción: que si los demandantes tuvieren algún derecho tienen remedio completo, rápido y eficaz en los procedimientos ordinarios de la ley para garantizarlo así como para asegurar la efectividad de la sentencia que pueda dictarse; que los demandantes están impedidos de atacar el contrato y de solicitar su nulidad y recisión; que aunque el contrato adoleciera de algún vicio de nulidad ha quedado convalidado y extinguida la acción que se ejercita: negaron haber inducido a error a los demandantes: alegaron que éstos tuvieron conocimiento de las facultades de las demandadas porque constan archivadas en la Secretaría Ejecutiva de Puerto Rico: negaron que la Porto Rico Racing Corporation carezca de recursos para responder a los demandantes de su reclamación o que sea insolvente, pues tiene un capital en efectivo de $18,000 y la San Juan Racing & Sporting Club

tiene bienes por $300,000; negaron que el hipódromo y sus beneficios corran peligro de perderse o de sufrir daños de consideración y alegaron que los demandantes se han beneficiado con el contrato porque la San Juan Racing & Sporting Club ha cerrado su hipódromo y lo ha destruído, estando completamente inservible; y por último ofrecieron constituir fianza a favor de los demandantes para garantizarles de su reclamación.   También presentaron su contestación a la demanda oponiéndose a ella por distintos fundamentos.

De las pruebas presentadas en la vista de la moción sobre nombramiento de síndico resulta lo siguiente:

Que después de celebrado el contrato de arrendamiento de 21 de septiembre de 1923 han surgido desavenencias entre los accionistas-directores de ambas corporaciones, que son las mismas personas: que si bien en el libro de actas de la Porto Rico Racing Corporation no consta que celebrara sesión el 17 de septiembre de 1923 y que tomara el acuerdo que se dice en la certificación que presentó su presidente al otorgarse la escritura de arrendamiento, sin embargo de dicho libro consta que el 10 de abril de 1923 se acordó autorizar al presidente para que hiciera las gestiones que estimase oportunas para tomar en arrendamiento uno o más hipódromos de los que existen en esta isla: que el 24 de septiembre de 1923 su presidente dió cuenta en sesión de accionistas de que se había firmado la escritura de arrendamiento del hipódromo Quintana Racing Park con el compromiso de ceder una acción a don Deogracias Viera por su valor a la par de $1,000; habiéndose acordado por unanimidad cederle dicha acción y tomando posesión en ese día el Sr. Viera como director: que en sesión de directores del 16 de octubre se dió cuenta de haberse firmado la escritura de acuerdo con resoluciones tomadas el 17 de septiembre de 1923; que en sesión del 27 de octubre se acordó

ratificar el arrendamiento del hipódromo Quintana Racing Park e insertar en el libro el acuerdo de 17 de septiembre de 1923 según consta en la certificación que libró el secretario y se acordó además proponer al Sr. Viera sustituir la garantía de la San Juan Racing & Sporting Club por la de siete de sus directores, por una fianza de una corporación de las que hacen esos negocios en esta isla o por un depósito en efectivo en el banco, ofreciéndole además que si le compra el hipódromo le será garantizado con hipoteca so-, bre él la parte del precio que quede aplazada; que en dicha acta se insertó el acuerdo de 17 de septiembre de 1923 que en dicho día se tomó por unanimidad. El Sr. Viera no aceptó la sustitución de la fianza.

En cuanto a la San Juan Racing & Sporting Club no consta del acta de la sesión del día 17 de septiembre de 1923 que se tomara acuerdo alguno con respecto al Quintana Racing Park, pero en la sesión del 30 de octubre de 1923 se tomó por mayoría de votos el acuerdo de insertar en ella el que por unanimidad se había tomado el 17 de septiembre de 1923 autorizando a su presidente para constituirla en fiadora de la Porto Rico Racing Corporation por el arrendamiento del Quintana Racing Park, cuyo acuerdo ratificó la mayoría; que el 13 de noviembre de 1923 fué aprobada una enmienda a sus cláusulas de incorporación al efecto de facultarla para constituirse en fiadora o garantizadora de toda clase de contratos, porque habiéndose constituído en fiadora para con los esposos Viera bajo la impresión de que tenían facultad para ello sin embargo después de haber consultado el asunto están en duda de si tenían y tienen tal facultad.

De la prueba testifical resulta que las negociaciones para el arrendamiento con el Sr. Viera las tuvo el presidente de la San Juan Racing & Sporting Club, que también es accionista y director de la Porto Rico Racing Corporation; que

tres días antes de firmarse la escritura de arrendamiento el presidente de la San Juan Racing & Sporting Club y don Deogracias Viera se presentaron en una notaría llevando ambos una minuta para la escritura en la que el contrato se celebraba con la Porto Rico Racing Corporation y los esposos Viera: que al día siguiente se agregó a la minuta la garantía de la San Juan Racing & Sporting Club, firmándose en esa forma la escritura el día después, 21 de septiembre: que la mayoría de los accionistas y directores de la San Juan Racing & Sporting Club declararon que el acuerdo de fianza se tomó el día 17 de septiembre de 1923 por si era pedida por el Sr. Viera pero que no se hizo constar en el acta para darle forma de acuerdo con lo que se dijera en la escritura.

También se presentó con la oposición de las demandadas alguna evidencia tendente a probar que la pista del hipódromo Quintana Racing Park estaba encharcada, apareciendo de las declaraciones de los testigos de ambas partes que en los días a que ellos se referían estaba lloviendo mucho en aquel sitio.

Terminada la práctica de la prueba el día 28 de noviembre por la tarde los demandados dijeron a la corte que antes de que dictase cualquier resolución querían radicar una petición escrita para prestar fianza en caso de que se quiera nombrar un síndico y que si la corte no la estimaba suficiente hacían la oferta de depositar en ella todo el producto del hipódromo hasta que la corte resolviera en definitiva o bien que la corte suspendiera su resolución hasta el 3 de diciembre siguiente ofreciéndole depositar $10,000 o mayor cantidad para responder de los productos del hipódromo por el día 29 de noviembre y por el domingo siguiente 2 de diciembre, pero la corte resolvió lo siguiente:

"La corte * * * llega a la conclusión de que los demandantes tienen grandes probabilidades de éxito en su demanda y

procede el nombraminto de un síndico para que de acuerdo con
las disposiciones y jurisprudencia aplicables, se haga cargo del Hi-
pódromo Quintana Racing Park y lo administre y conserve bajo
la orden de la corte en beneficio de la parte que en definitiva re-
sulte triunfante en la acción.    No pudiéndose en este acto designar
una persona que ocupe el cargo de síndico y siendo una hora avan-
zada de la tarde y mañana jueves, día festivo; el sábado, medio
día festivo, y el domingo próximo, también día festivo, y en esos
dos días festivos, a saber jueves y domingo, se han de celebrar ca-
rreras en el mencionado Hipódromo Quintana Racing Park, mien-
tras la corte designa un síndico en propiedad, es su deseo, que di-
cho Hipódromo sea puesto en la posesión inmediata del señor
Eduardo Urrutia, márshal de esta corte de distrito, para que actúe
como tal síndico interinamente o provisionalmente hasta el pri-
mer día hábil en que esta corte pueda designar un síndico en defi-
nitiva.    Mientras tanto, el síndico nombrado así provisionalmente,
habrá de prestar una fianza de cinco mil dollares;    tomará inme-
diata posesión después de haber cualificado, de todas las edifica-
ciones, terrenos y pertenencias del Quintana Racing Park, y dará
cuidado especial, administrándolas bajo la autoridad de la corte,
en dicho Hipódromo, a las carreras que habrán de tener lugar en
el día de mañana jueves 29 de noviembre y el domingo 2 de di-
ciembre, del corriente año.''

El viernes 30 de noviembre nos fué presentada la pe-
tición de *certiorari* y libramos el auto.    En la vista que tuvo
lugar ante nosotros intervinieron los esposos demandantes.

En el caso de *Balasquide* v. *Rossy,* 18 D. P. R. 33, he-
mos dicho que la facultad de nombrar síndico es muy deli-
cada y debe ejercitarse con gran cautela y solamente cuando
las circunstancias del caso exigen un remedio urgente o
cuando la corte tenga motivos suficientes para creer que
existe un peligro inminente de que pueda ocurrir una pér-
dida, para que no sea mayor el perjuicio que ocasione que
lo que se trata de evitar; que jamás debe hacerse uso de
esa facultad en caso de duda ni cuando hay probabilidades
de que su ejercicio ocasione injusticia o perjuicio a los de-
rechos privados.    Estas reglas nos servirán de norma para
resolver el presente recurso.

Aunque los demandantes alegaron en su petición sobre nombramiento de síndico que el hipódromo Quintana Racing Park está produciendo una cantidad considerable de renta semanal que calculan en $2,500 que, según su información y creencia, la Porto Rico Racing Corporation carece de bienes suficientes con que responder a los demandantes de esos beneficios que reclaman con el hipódromo, por lo que unos y otros corren peligro de perderse o de sufrir daños de consideración, sin embargo, no trataremos esta cuestión porque los demandantes han tratado principalmente en su alegato ante esta Corte Suprema la cuestión de fraude de las demandadas en el contrato y porque la obligación que claramente aparece del contrato contraída por la Porto Rico Racing Corporation es la de pagar $18,000 anuales por el arrendamiento, y si por la nulidad del contrato tiene dicha corporación el deber de entregar también a los demandantes como frutos del hipódromo la ganancia que obtiene por su negocio, por su experiencia, por su capital y sobre todo por la falta de competencia por haber sido cerrado y destruído el hipódromo de la San Juan Racing & Sporting Club, es cuestión que no es muy clara para que pueda servir de fundamento para el nombramiento de síndico y debe ser resuelta en cuanto al derecho y su alcance cuando se decida el pleito principal.

También podemos dejar a un lado la cuestión de si la pista del hipódromo está en mal estado de conservación porque ese hecho no fué alegado en la petición ni en la demanda y porque resultando de las pruebas de ambas partes que en los días a que se refiere ese hecho estaba lloviendo mucho en el sitio en que está el hipódromo, no podríamos afirmar que el estar encharcada y fangosa la pista se deba al abandono y descuído de la Porto Rico Racing Corporation.

Si bien es cierto que por haber tenido el Sr. Viera las

conferencias para el arrendamiento de su hipódromo con el presidente de la San Juan Racing & Sporting Club, que ahora es fiadora, podría creer que con ella se celebraría el contrato, lo cierto es que las negociaciones terminaron en un contrato de Viera con la Porto Rico Racing Corporation, garantizado por la otra corporación, por lo que cualquiera que fuera el propósito del Sr. Viera quedó desvirtuado por el hecho último de haber contratado el arrendamiento con la Porto Rico Racing Corporation, siendo aplicable por analogía a este caso la doctrina sentada en el de *Cintrón & Aboy* v. *Solá,* 22 D. P. R. 262, por lo que no puede alegar fraude por haber otorgado la escritura con la Porto Rico Racing Corporation, y no con la San Juan Racing & Sporting Club.

En cuanto a haber sido engañado por el presidente de la Porto Rico Racing Corporation por no ser cierto que estuviera autorizado, según la certificación que presentó al otorgarse la escritura, para tomar en arrendamiento el hipódromo, de la evidencia resulta que estaba autorizado desde abril de 1923 para tomar en arrendamiento uno o más hipódromos de los que existen en esta isla y que si bien no existe acta del 17 de septiembre de 1923 de que se celebrara sesión en ese día, sin embargo, de acta posterior consta que ese día se celebró sesión y que se tomó el acuerdo de arrendar el hipódromo del Sr. Viera, arrendamiento que fué ratificado por otro acuerdo. Por consiguiente, si hubo informalidad o descuido en no extender el acta de 17 de septiembre de 1923 referente a la autorización dada a su presidente para tomar en arrendamiento el Quintana Racing Park, no nos atrevemos a declarar en vista de esos hechos que tal acuerdo no fué tomado en ese día y que por esto hubo fraude.

Algo parecido ocurre con la garantía dada al contrato por la San Juan Racing & Sporting Club. En el acta de

la sesión de 17 de septiembre de 1923 no consta que se autorizara a su presidente para constituirla en garantizadora de ese contrato, porque según declaró dicho presidente quedó pendiente de darle forma de acuerdo con la escritura, pero en otra acta posterior se hizo constar que ese acuerdo fué tomado en dicho día y además se acordó enmendar las cláusulas de incorporación para facultarla expresamente a dar esa clase de garantías por si sus cláusulas originales no son suficientes, por lo que en vista de esos hechos no podemos declarar que dicho presidente no fué autorizado para garantizar el contrato, y si podía o no garantizarlo o si la enmienda de sus cláusulas no puede dar valor al contrato ya celebrado son cuestiones que no resultan tan claras que justifiquen ahora en este procedimiento la declaración de fraude.

Además, cada caso ha de resolverse por las circunstancias que en él concurran y los hechos en el presente demuestran que si hubo alguna informalidad en no extenderse oportunamente en las actas de las corporaciones los acuerdos que tomaron el 17 de septiembre de 1923 o en creer el presidente de la San Juan Racing & Sporting Club, que también es accionista de la Porto Rico Racing Córporation, que dichas corporaciones aprobarían sus actuaciones en el arrendamiento y la garantía como medio de poner término a una competencia que le estaba haciendo perder dinero a los que eran accionistas de ambas corporaciones, no puede por esto decirse que hubo engaño para el Sr. Viera tanto más cuanto que la conducta de dichas corporaciones demuestra no sólo que han querido cumplir el contrato y que lo están cumpliendo sino que para obviar dificultades han ofrecido nueva garantía al arrendador y, lo que es aun más fuerte, por haber cesado la San Juan Racing & Sporting Club en su negocio de dar carreras de caballos en su hipódromo de Santurce y de estar destruyéndolo se ha creado

una situación difícil para dicha corporación y ventajosa para el Sr. Viera.

Por todas estas circunstancias opinamos que este no es un caso propio para el nombramiento de un síndico por lo que la orden decretándolo, dictada por la corte inferior, debe ser anulada.

En vista de la conclusión a que hemos llegado no es necesario que expongamos las razones que tuvimos para negarnos a reconsiderar nuestra resolución de 1º. de diciembre de 1923 ordenando cesara el síndico provisional nombrado por la corte inferior.

> *Anulada la resolución de la corte inferior sobre nombramiento de síndico.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Hutchison y Franco Soto.