VÍCTOR M. RAMÍREZ, peticionario, *v.* CORTE DE DISTRITO DE MAYAGÜEZ, HON. R. RAMÍREZ PABÓN, JUEZ, demandada.

Núm. 1576.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Febrero 13, 1945.

*Géigel & Silva* y *José López Baralt,* abogados del peticionario; *Rodolfo Ramírez Pabón, pro se,* en comparecencia especial hecha en el caso; *Vicente Palés Matos,* abogado del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Se trata en este caso de un recurso de *certiorari* para revisar la resolución de la Corte de Distrito de Mayagüez

por la cual antes de sentencia se decretó la sindicatura de dos sociedades dentro de un pleito instituído el 2 de noviembre de 1943 por un alegado socio, solicitando fuesen liquidadas y se le entregase su participación. El demandante Arcadio Ramírez Cuerda alegó que constituyó dos sociedades colectivas, una con el demandado Víctor M. Ramírez, peticionario en este recurso, bajo la razón social de R. & R. Laboratories, y otra con el mismo Víctor M. Ramírez y Daniel Ramírez bajo la razón social de Distilleries V. M. Ramírez y Cía.; [1] que el demandante aportó en efectivo mil quinientos dólares a la primera sociedad y tres mil novecientos a la segunda, y Víctor M. Ramírez el equipo utilizado en las sociedades; que la primera sociedad tenía por objeto la fabricación de bebidas alcohólicas y de otros productos para ser vendidos en Puerto Rico y Estados Unidos, y la segunda se dedicaba también a la fabricación y venta de bebidas alcohólicas y a la compra y reventa de alcohol; y que ambas sociedades se constituyeron sin término de duración. Alegó además que en la sociedad R. & R. Laboratories el demandante y Víctor M. Ramírez se dividirían de por mitad las ganancias, y en Distilleries V. M. Ramírez y Cía. las ganancias habrían de dividirse por iguales partes entre los tres socios; que el 30 de octubre de 1943 puso en conocimiento de su socio Víctor M. Ramírez, con encargo de que éste lo trasmitiera inmediatamente al otro socio Daniel Ramírez, quien residía en California, el hecho de que se retiraba de ambas sociedades, y solicitó que se le hiciera la liquidación de los beneficios; que el demandado Víctor M. Ramírez se

[1] De la demanda no aparece la fecha de constitución de las sociedades, pero del testimonio del demandante resulta que fueron constituídas verbalmente en junio de 1942.

No obstante lo dispuesto en el artículo 98 del Código de Comercio, ni el otorgamiento de la escritura pública ni la inscripción de ésta en el registro mercantil son condiciones esenciales para la existencia del contrato ni para que éste produzca efecto entre los contratantes, y sí sólo formalidades legales encaminadas a salvaguardar los derechos de terceros. Esta es la sana y verdadera teoría, como se dice en Gay de Montellá, Código de Comercio, tomo II, pág. 70.

negó por sí y en representación del otro socio a llevar a cabo la liquidación solicitada, y continuó actuando como único miembro de las sociedades, negando al demandante toda ingerencia en las mismas. Alegó finalmente por información y creencia que ambas sociedades poseían entonces un capital no menor de sesenta mil dólares, y suplicó que se dictara una sentencia ordenando la liquidación de las sociedades y la entrega de la participación que pudiera corresponderle.

En la misma fecha en que se radicó la demanda el demandante solicitó y obtuvo una orden de aseguramiento de sentencia previa prestación de una fianza por la cantidad de diez mil dólares,[2] embargándose fondos en distintos bancos de Mayagüez por la cantidad total de $44,812.52, depositados unos a nombre de las sociedades y otros a nombre de Víctor M. Ramírez. Fueron también objeto de embargo todos los documentos, incluyendo fórmulas, facturas, cheques y libros de contabilidad, lo cual fué ocupado por el márshal y depositado bajo su custodia en la corte de distrito. Por estipulación de las partes, la corte el 10 de noviembre de 1943 modificó la orden de aseguramiento de sentencia, reduciendo la cantidad embargada a $22,406.26, quedando levantado el embargo en cuanto al resto de la cantidad.[3]

Después de varias prórrogas, el día 10 de enero de 1944 el demandado Víctor M. Ramírez radicó su contestación, en

[2] El 10 de mayo de 1944 y a petición del demandante con la oposición del demandado Víctor M. Ramírez, la corte redujo la fianza a seis mil dólares.

[3] Por resolución de 4 de febrero de 1944 la corte inferior, con el allanamiento del demandante, levantó el embargo sobre un cheque certificado librado el 7 de octubre de 1943 por Occhiato Mercantile Corporation a favor de Distilleries V. M. Ramírez & Co. por la suma de $9,750, y sobre un giro contra Nueva York por la suma de $3,250 librado el 24 de septiembre de 1943 por Víctor M. Ramírez a favor de Albert Pick. Asimismo ordenó que se hiciera entrega por el márshal a Víctor M. Ramírez del permiso federal que fuera expedido a Distilleries V. M. Ramírez & Co. para la operación de su planta de licores, el cual al igual que el cheque y el giro antes mencionados se hallaban entre los documentos embargados. También ordenó con fecha 16 de febrero de 1944 con la conformidad del demandante que se entregase al demandado Víctor M. Ramírez dos permisos para la rectificación de licores, concediendo al demandante autorización para sacar copia de los permisos antes de que fueran retirados de la custodia del márshal.

la cual sustancialmente negó tener sociedad con el demandante, que éste le comunicara su determinación de retirarse de las sociedades y que solicitase liquidación de beneficio en las mismas.

No obstante el embargo trabado, el demandante radicó el 15 de mayo de 1944 una petición interesando que las sociedades fuesen puestas en sindicatura. La solicitud se fundó en que el demandado Víctor M. Ramírez, por sí y en representación del otro socio Daniel Ramírez, se negaba a llevar a cabo la liquidación solicitada por el demandante; que el demandado Víctor M. Ramírez continuaba haciendo contratos y negocios en nombre de Distilleries V. M. Ramírez y Cía. sin consultar ni rendir cuentas al demandante; que éste carecía de medios para fiscalizar los negocios que se estaban llevando a cabo y para impedir el manejo indebido de los bienes de Distilleries V. M. Ramírez y Cía.; y que el medio más justo para salvaguardar los intereses de las partes era poner las sociedades en sindicatura, ya que el demandante tenía fundado temor de que el demandado Víctor M. Ramírez hiciera uso indebido de las ganancias que se obtuvieran en los negocios que estaban llevando a cabo Distilleries V. M. Ramírez y Cía. y R. & R. Laboratories. En la petición se suplica el nombramiento de un síndico con poderes para incautarse de los bienes de las sociedades y celebrar contratos o continuar los existentes.

La vista de la solicitud fué señalada para el 26 de mayo de 1944, habiendo radicado el demandado Víctor M. Ramírez el día anterior a la vista una moción oponiéndose a la sindicatura.

En esa vista el demandado Víctor M. Ramírez, al ser examinado como testigo del demandante, admitió que había comprado por la cantidad de aproximadamente diecisiete mil dólares una casa en Miami con el producto de mil cajas de ginebra pertenecientes a la sociedad Distilleries V. M. Ra-

mírez y Cía., vendidas a Albert Pick,[4] y que tomó de la misma sociedad la cantidad de cincuenta mil dólares, con la cual compró acciones a su nombre en una corporación denominada Distilleries V. M. Ramírez, Inc., todo lo cual hizo sin el consentimiento del demandante.

Sin que se hubiera resuelto la petición de nombramiento de *receiver,* el día 3 de julio de 1944 comenzó el juicio en el caso principal y continuó el 5 y el 6, recibiéndose toda la evidencia del demandante y el testimonio de un testigo del demandado. Se acordó entonces continuar el juicio en enero 1945[5]

---

(4) No nos explicamos la conducta del taquígrafo interino de la corte inferior, Moisés del Toro, quien tomó las notas taquigráficas de la vista celebrada el 26 de mayo de 1944, al expedir tres certificaciones distintas sobre el récord taquigráfico de esa vista. En la expedida el 5 de agosto de 1944, a solicitud de los señores Géigel y Silva, abogados del demandado Víctor M. Ramírez, aparece lo siguiente:

"P. ¿Es o no cierto, a pesar de lo que usted declara, que usted esa casa la compró con mil cajas de ginebra? R. No, señor.

"P. ¿Y que esa ginebra era de Distillery V. M. Ramírez? R. No, señor."

En otra expedida el 1 de septiembre de 1944, a solicitud del juez de la corte inferior, la materia antes transcrita consta así:

"P. ¿Es o no cierto, a pesar de lo que usted declara, que usted esa casa la compró con mil cajas de ginebra? R. Sí, señor.

"P. ¿Y que esa ginebra era de Distillery V. M. Ramírez? R. Sí, señor."

Y en la transcripción de evidencia certificada por el taquígrafo el 23 de octubre de 1944, la misma materia aparece de este modo:

"P. ¿Es o no cierto, a pesar de lo que usted declara, que usted compró la casa de Miami con mil cajas de ginebra que fueron vendidas a Albert Pick, con cuyas cajas no tuvo que ver su esposa? R. Sí, señor.

"P. ¿Y que esa ginebra era de Distillery V. M. Ramírez? R. Sí, señor."

Sin perjuicio de que el Procurador General proceda a investigar esta impropia conducta por parte del taquígrafo, queremos hacer constar que a los efectos de este caso no altera el resultado a que hemos de llegar, toda vez que existe otra transacción consistente en la inversión de cincuenta mil dólares pertenecientes a Distilleries V. M. Ramírez y Cía. en acciones a nombre de Víctor M. Ramírez en la corporación Distilleries V. M. Ramírez, Inc.

(5) Se queja el abogado del demandado, aquí peticionario, de que la corte, a pesar de que el 6 de julio de 1944, al terminarse la práctica de la prueba, manifestó que no resolvería la moción sobre nombramiento de receiver hasta que no se hubiese oído la prueba de ambas partes, dictó la resolución antes de que el demandado hubiese tenido la oportunidad de presentar toda su prueba. A nuestro juicio ésta es una mala inteligencia del abogado del peticionario, pues del récord no aparece tal manifestación y por el contrario el juez ha presentado con el *return* una moción jurada en la que asegura que en ningún momento hizo tal

El 14 de julio de 1944 la corte decretó la sindicatura.[6] De la resolución tomamos el siguiente párrafo, el cual revela los motivos que tuvo la corte para decretarla:

"De la prueba testifical y documental ofrecida por el demandante aparece, sin que ello signifique que estamos resolviendo en definitiva este caso, que se constituyeron entre el demandante Arcadio Ramírez Cuerda y los demandados Víctor M. Ramírez y Daniel Ramírez dos sociedades mercantiles regulares colectivas. Sabido es que en esta clase de sociedades, los socios gestores (y tal es el carácter que aparece teniendo el demandante Arcadio Ramírez Cuerda en R. & R. Laboratories y en Distilleries V. M. Ramírez y Cía.) son responsables con todos sus bienes de las deudas de la sociedad, aún después de dejar de existir la sociedad (15 D.P.R. 660; 24 D.P.R.

manifestación. La declaración del juez fué corroborada por las manifestaciones que al mismo efecto hiciera en su informe oral ante este Tribunal el abogado del demandante. Además, los siguientes párrafos del récord tienden a demostrar que la moción sobre nombramiento de síndico quedó definitivamente sometida a la consideración de la corte el 6 de julio de 1944. Al terminar de declarar el testigo del demandado y anunciar la corte que el juicio no podría continuarse hasta el mes de enero de 1945, el abogado del demandante, dirigiéndose a la corte, dijo:

"Voy a suplicar a V. H. que en vista de las circunstancias aligere la resolución relacionada con el receiver."

Y el abogado del demandado dijo:

"¿La corte desea oír a las partes en relación con la sindicatura, o cree que ha sido suficientemente discutida?"

Replicando el juez:

"La corte cree que ha sido suficientemente discutida."

Inmediatamente después dijo el abogado del demandante:

"Sr. Juez, para que conste en récord: como parte de nuestra prueba en la sindicatura y para que V. H. la tome en consideración al resolver la cuestión, sometemos la prueba que hemos presentado en el caso *in chief*."

Si ya se había presentado prueba en apoyo de la moción de sindicatura, habiendo declarado en primer término el propio demandado, y tanto la corte como el abogado del demandado entendían que la moción había sido suficientemente discutida y el abogado del demandante solicitó en el mismo acto que se aligerase la resolución, parece claro que todas las partes entendían que la moción había quedado definitivamente sometida a la consideración de la corte, máxime si se tiene en cuenta que el remedio solicitado es urgente por naturaleza y la corte había expresado que hasta el mes de enero del año siguiente no podría continuar oyendo la prueba de la parte demandada.

(6) El síndico Angel Arroyo Rivera tomó posesión de su cargo previa prestación de fianza un día después. Por orden de 28 de julio de 1944 la corte dejó sin efecto su nombramiento, y en su lugar nombró a José Rafael Gelpí, quien previa prestación de fianza tomó posesión de su cargo el 23 de agosto de 1944.

94; 28 D.P.R. 603, etc.). Ello nos conduce al hecho inescapable de que si el socio Víctor M. Ramírez, abrogándose todos los derechos de las sociedades por él constituídas con el demandante y Daniel Ramírez, *utiliza los fondos de las sociedades, o sus bienes, o sus beneficios, en forma tan caprichosa que conduzca a la creación de deudas, o a la desaparición, traslado u ocultación de dichos fondos, bienes o beneficios de las precitadas sociedades, el demandante Arcadio Ramírez Cuerda vendrá en la obligación legal de responder con sus bienes todos por las deudas creadas por Víctor M. Ramírez,* sin que Arcadio Ramírez Cuerda haya podido intervenir o fiscalizar los contratos o actos realizados por Víctor M. Ramírez en nombre y representación de R. & R. Laboratories y Distilleries V. M. Ramírez y Cía. Y como en este caso aparece que no se le permite a Arcadio Ramírez Cuerda tal intervención o fiscalización, nos parece una medida de saludable justicia que el tribunal intervenga por medio del síndico. La prueba del demandante peticionario indica que Arcadio Ramírez Cuerda tiene un interés sustancial en los bienes, fondos, productos y beneficios de ambas sociedades, los cuales fondos, bienes, productos y beneficios se encuentran en poder y bajo el dominio y control del demandado Víctor M. Ramírez, quien no ha permitido al demandante desde septiembre u octubre de 1943 intervención alguna en los mismos; y esa prueba señala el hecho de que dichos bienes, fondos, productos y beneficios de las sociedades se hallan en inminente y fundado peligro de confundirse con otros bienes, fondos y productos, y de ser trasladados entre tanto esté pendiente de fallo el presente pleito." (Bastardillas nuestras.)

Concedemos que la facultad de nombrar un síndico sólo debe ejercitarse cuando sea absolutamente necesario para proteger los intereses en litigio mientras se resuelve el pleito principal, y que no debe hacerse uso de ese remedio cuando exista cualquiera otro que sin perjudicar innecesariamente los intereses de la parte contra quien se expida, proteja adecuadamente los derechos de la que lo solicita. Así lo ha resuelto este Tribunal en *Balasquide* v. *Rossy, Juez de Distrito,* 18 D.P.R. 33; *P. R. Racing Corp., et al.* v. *Corte de Dist. de San Juan,* 32 D.P.R. 871, y *Rodríguez, et al.* v. *Corte,* 59 D.P.R. 977. Al mismo efecto, véase *Hawkins* v. *Aldridge* (Ind. 1937), 7 N. E. (2d) 34, 109 A.L.R. 1205. Pero en la

aplicación de estos principios debe tenerse en cuenta la amplia discreción que tiene y debe ejercitar el juez de acuerdo con los hechos y circunstancias de cada caso.

En el presente caso se trata, como hemos dicho, de dos sociedades constituídas por tiempo indefinido. El demandante notificó a sus socios su determinación de descontinuarlas, y solicitó que fueran puestas en liquidación. Pero el socio Víctor M. Ramírez, según alega el demandante, en su propio derecho y en representación de su hermano el socio Daniel Ramírez, rehusó reconocer a Arcadio Ramírez Cuerda la calidad de socio que alegaba, y consecuentemente se negó a liquidar las sociedades, continuando él los negocios de las mismas. Como Víctor M. Ramírez rehusa reconocer el derecho que alega tener el demandante como socio, no sólo para obtener la disolución si que también para participar en la liquidación de las sociedades, es de aplicación el artículo 182 del Código de Enjuiciamiento Civil, que en lo pertinente dispone:

"Un síndico podrá ser nombrado por la corte en que un pleito esté pendiente o se haya fallado, o por el juez de dicha corte:

"1. En una acción entablada . . . entre socios, u otras personas que en común posean o estén interesadas en bienes o fondos, mediante solicitud del demandante o de cualquier parte, cuyo derecho o interés en dichos bienes o fondos o productos de los mismos sea presumible, siempre que se probare que los bienes o fondos corren peligro de perderse, trasladarse o sufrir daños de consideración."

En California, de donde fué tomado el artículo que acabamos de transcribir en parte, se resolvió en *Breedlove* v. *J. W. & E. M. Breedlove Excavating Co.* (Cal. 1942), 132 P. (2d) 239, 241:

"Es verdad que la facultad conferida a las cortes para nombrar síndicos es delicada y debe ejercitarse con cautela para evitar perjuicio a las partes y a sus bienes [cita], y que el remedio debe considerarse como drástico y extraordinario, al cual debe recurrirse sólo cuando no existan otros remedios menos onerosos [cita]; sin embargo, esa facultad generalmente descansa en la discreción de la

corte, que debe ejercitarla considerando las circunstancias concurrentes [cita], y cuando una conclusión de hecho basada en evidencia contradictoria es al efecto de que existe una amenaza de peligro a bienes o a fondos, y se nombra un síndico, raras veces la corte superior sostendrá que la inferior ha abusado de la discreción que le ha sido confiada. [Cita.] En verdad, es tan amplia la discreción del juez ante quien se presente la petición [cita] que al ejercitarla solamente será alterada por una corte de apelación cuando se haya actuado arbitrariamente. [Cita.]"

Y en el caso de *Whitley* v. *Bradley* (Cal. 1910), 110 Pac. 596, 598, se dijo:

"Solamente debe acudirse al remedio de equidad sobre nombramiento de síndico cuando las exigencias del caso claramente demuestren que es absolutamente necesario para la protección de los derechos de todas las partes envueltas en el litigio objeto de la solicitud. El nombramiento de un síndico es justamente considerado como extraordinario o drástico, y una corte de equidad jamás ejercitará su discreción a favor de una moción en que se solicite el auxilio de ese remedio a menos que satisfactoriamente se demuestre que es necesario para preservar y proteger completamente los derechos de todas las partes. [Cita.] Por supuesto, debe probarse que la persona que lo solicita tiene por lo menos un derecho o interés probable en la propiedad o fondo envuelto en el litigio, y que existe peligro de que se pierda o destruya o sea malversado a menos que se nombre un síndico *pendente lite;* y cuando a base de prueba contradictoria la corte inferior concluye que existe ese derecho o interés y peligro de destrucción o malversación de la propiedad o fondo, la corte de revisión no está por lo general en condiciones de decidir que la de primera instancia ha abusado de su discreción al nombrar un síndico. [Citas.] La determinación de la cuestión aquí envuelta debe por lo tanto necesariamente descansar en la proposición de si la evidencia en que se basó la orden apelada afirmativamente demuestra un abuso de discreción."

En el presente caso la prueba que ante sí tuvo la corte inferior tendió a demostrar la relación de socios entre el demandante y los demandados. La existencia de esa relación, aunque contradicha por Víctor M. Ramírez y por cierta evidencia tendente a demostrar que Arcadio Ramírez Cuerda percibía comisiones por artículos vendidos por la sociedad,

está sostenida por las declaraciones del demandante y de Emilio Sorrentini, inspector de bebidas, y por la escritura de poder otorgada por Víctor M. Ramírez ante el notario Sixto Charneco Murillo el 8 de junio de 1943, en la cual Víctor M. Ramírez expresamente manifestó que Arcadio Ramírez Cuerda era socio gestor de Distilleries V. M. Ramírez y Cía. y R. & R. Laboratories.[7] También está sostenida por el considerable número de cheques, algunos de ellos por fuertes cantidades,[8] suscritos por Arcadio Ramírez Cuerda a nombre de Distilleries V. M. Ramírez & Cía.

La evidencia con respecto a las inversiones que a su nombre hizo Víctor M. Ramírez con fondos de la sociedad, a las cuales nos hemos referido anteriormente, sostiene la conclusión a que llegara la corte inferior sobre el riesgo que corría el interés que al ser liquidadas las sociedades pudiera corresponder a Arcadio Ramírez Cuerda. Si a todo esto se agrega que el demandado Víctor M. Ramírez permanecía en posesión del resto del capital de las sociedades no afectado por el embargo, manejándolo como único dueño sin dar cuentas al demandante, es evidente que la conclusión a que llegó la corte sobre este particular está sostenida por la evidencia.

Réstanos ahora determinar si la corte inferior pudo haber utilizado otro remedio que adecuadamente protegiese los intereses de Arcadio Ramírez Cuerda sin lastimar los derechos de Víctor M. Ramírez.

Arguye el peticionario que el embargo trabado con anterioridad al nombramiento de receiver protegía suficiente-

---

(7) El párrafo segundo de la referida escritura dice:

"Que Víctor M. Mamírez concede por este documento poder tan amplio, suficiente y bastante como menester fuere para y autorizarlo a don Arcadio Ramírez Cuerda *su socio gestor en la destilería V. M. Ramírez y Cía. y R. & R. Laboratories* a transar con la Puerto Rico Beverages and Flavoring, Inc., la deuda pendiente con nuestra compañía, la R. & R. Laboratories." (Bastardillas nuestras.)

(8) Uno de 2 de agosto de 1943 a la orden de United States Collector of Internal Revenue por $120,120, y dos de 3 de agosto de 1943 a favor del mismo colector por $90,090 y $60,060, todos contra The Royal Bank of Canada, Sucursal de Mayagüez, Puerto Rico.

mente cualquier interés que pudiera tener Arcadio Ramírez Cuerda. Es verdad que el 2 de noviembre de 1943 Arcadio Ramírez Cuerda obtuvo una orden de aseguramiento de sentencia por la cual se embargó la cantidad de $44,812.52 en efectivo, y que dicho embargo fué reducido por estipulación a la cantidad de $22,406.26 el 10 de noviembre de 1943. Pero ese embargo, como veremos, no protegía suficientemente los derechos de Arcadio Ramírez Cuerda.

El artículo 154 del Código de Comercio dispone:

"Ningún socio podrá exigir la entrega del haber que le corresponda en la división de la masa social, *mientras no se hallen extinguidas todas las deudas y obligaciones de la compañía,* o no se haya depositado su importe, si la entrega no se pudiera verificar de presente." (Bastardillas nuestras.)

Y el profesor italiano Lorenzo Mossa en su obra Derecho Mercantil, volumen I, pág. 116, citado por el peticionario, refiriéndose a la responsabilidad de los socios por las obligaciones en que puede incurrir la sociedad después que el socio ha manifestado su resolución de retirarse de la misma, dice:

"La calidad de socio (en la sociedad colectiva) se proyecta en el tiempo y sigue al socio de responsabilidad limitada, aún retirado o excluído de la sociedad. El límite temporal de las obligaciones del socio está en el momento de la publicación de su salida, la cual equivale a la disolución en cuanto a la relación de socios. Éste queda obligado por todos los actos de la sociedad en aquel día, *siendo además responsable de las obligaciones en curso que también debe, en principio, garantizar con su cuota, que se le debe retener hasta el fin de las operaciones.*" (Bastardillas nuestras.)

De suerte que el embargo trabado por un socio sobre bienes de la sociedad para asegurar la participación que pueda corresponderle al practicarse la liquidación no puede perjudicar a los acreedores de la sociedad, ya que su derecho a exigir la entrega del haber que le corresponda está supeditado a que se hayan pagado todas las deudas y obligacio-

nes de la sociedad. Y como el otro socio Víctor M. Ramírez continuó en la gerencia de la sociedad, sin dar intervención al demandante, podría resultar que gran parte o la totalidad de los $22,406.26 tuviesen que ser aplicados a responsabilidades contraídas por las sociedades tanto antes como después del embargo. Podría también Víctor M. Ramírez incurrir en nombre de la sociedad en responsabilidades de tal importancia, aún en la ultimación de los negocios pendientes en la fecha en que se retiró el socio demandante, o malversar a tal extremo los bienes de las sociedades, que al practicarse la liquidación hubiese no sólo que aplicar los $22,406.26 objetos del embargo, si que también recurrir a los bienes privados del socio Arcadio Ramírez Cuerda para hacer frente a las responsabilidades de las sociedades.

Arguye también el peticionario que la corte pudo haberle exigido una fianza para responder de los perjuicios que pudieran irrogarse al demandante, y que la misma protegería adecuadamente sus derechos. Considerando que una vez prestada la fianza Víctor M. Ramírez continuaría operando el negocio y tratándose como se trata de un pleito entre socios, no vemos cómo ese remedio podría suministrar adecuada protección. El haber que pueda corresponder al demandante al liquidarse las sociedades es contingente, dependiendo como hemos visto de la forma en que Víctor M. Ramírez maneje los negocios de las sociedades. Aún después de prestada la fianza, él llevaría los libros de contabilidad y, no teniendo el demandante acceso a ellos, muy difícil es predecir qué balance, si alguno, de acuerdo con dichos libros podría corresponder al demandante. Sería distinta la situación si se tratase de un acreedor, quien una vez garantizado su crédito con una fianza suficiente, poco debe importarle la forma en que se conduzcan los negocios de las sociedades.

Tampoco sería adecuado el remedio de *injunction*. Lo que con él se conseguiría sería paralizar los negocios de las

sociedades, exponiéndolas a nuevas responsabilidades por el incumplimiento de los negocios en curso, sin contar la pérdida que sufrirían al dejar de percibir los beneficios que pudieran derivar en los nuevos negocios, que mediante el nombramiento de un síndico podrían llevarse a efecto, manteniendo así las sociedades como negocios en operación [*going concerns*].

Al discutir en esta opinión otros remedios que el peticionario indicó que podrían sustituir adecuadamente el de nombramiento de síndico, sin ser tan onerosos, hemos tenido que basar nuestra discusión en meras posibilidades que no se han probado en este caso. Parece conveniente hacer claro que al sostener la resolución recurrida nombrando al síndico, no nos hemos basado en estas posibilidades que podrían o no ocurrir, las cuales por sí solas no justifican el nombramiento de un síndico, sino en los hechos probados en este caso demostrativos de que los bienes de las alegadas sociedades corren el riesgo de perderse si la corte no nombra un receiver para impedir que el demandado aquí peticionario los malverse.

Por las razones expuestas, preciso es concluir que la corte inferior no abusó de su discreción al nombrar el síndico en este caso. Se ha demostrado que hasta tanto se resuelva el pleito principal, es necesario impedir que el aquí peticionario malverse el capital de las sociedades en perjuicio de los derechos que en relación con el mismo pudiera tener el demandante.

*Se declara sin lugar la petición de certiorari y devuélvanse los autos a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*