WILLIAM FREEMAN, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. WILFRIDO ROBERTS, JUEZ, demandado; HERBERT S. WERNER, ROBERT BERK y CARIBLANTIC REALTY CORP., interventores.

Número: C-64-31 Resuelto: 12 de marzo de 1965

2

 

*Morales & O'Connor* y *Francisco L. Acevedo Nogueras,* abogados del peticionario; *McConnell, Valdés & Kelley, Pablo R. Cancio* y *Ramón Morán Loubriel,* abogados de los interventores.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Se presentó la solicitud en este recurso de *certiorari* en la mañana del 27 de abril de 1964. En esa misma fecha libramos el auto para revisar una orden dictada el 21 de ese mes por el Tribunal Superior, Sala de San Juan, designando un síndico a petición de la parte demandante, y la corrección y validez de los actos realizados por dicho síndico bajo la autoridad de tal orden.

Los hechos y circunstancias del caso, revelados por los autos y que consideramos pertinentes a la decisión del recurso son los siguientes:

El 31 de octubre de 1963 los esposos Mario Marcantoni y Gladys Massanet, y Cariblantic Realty Corp. representada por su agente el Sr. Herbert Werner, suscribieron un documento redactado en el idioma inglés, en que los primeros prometieron vender cierta propiedad inmueble a la segunda por $793,650. A todos los efectos, los esposos Marcantoni se denominaron en el resto del documento como "los vendedores" y la corporación como "la compradora". El precio acordado se pagaría así: (a) $135,000 en efectivo, al otorgarse la escritura de venta; (b) la cantidad de $96,000 sería retenida por la compradora para satisfacer dos hipotecas constituidas sobre la propiedad, asumiendo la compradora su completo pago; (c) el remanente de $562,650.00 se pagaría en cinco plazos anua-

les consecutivos, de $112,530.00 cada uno, pagadero el primero dos años un día después de la fecha del otorgamiento de la escritura pública y definitiva de compraventa. El precio aplazado, sin intereses, quedaría garantizado con hipoteca otorgada por la compradora a favor de los vendedores.

Expresa el documento que simultáneamente con su otorgamiento "la compradora" ha depositado en custodia del Sr. José Antonio Luiña la cantidad de $10,000 evidenciada por el cheque Núm. 2797 de 21 de septiembre de 1963 expedido por William Freeman contra el First National Bank de Farminglade, N.Y. Dicha cantidad de $10,000 a ser aplicada al pago de $135,000 que debía satisfacer "la compradora" a los vendedores al otorgamiento de la escritura de venta y que sería entregada por el Sr. José Antonio Luiña simultáneamente con dicho otorgamiento. En caso de que "la compradora" no adquiriera la propiedad dicha cantidad se le devolvería pero si dejara de adquirir la propiedad después de venir obligada a ello bajo los términos de ese convenio, dicha cantidad sería entregada a los esposos prometientes quienes la recibirían por vía de todo daño líquido o penalidad a que tendrían derecho por razón de la negativa de la compradora a cumplir con el acuerdo.

Después de convenirse los hechos y circunstancias en que "la compradora" no vendría obligada a comprar y otros particulares, se acordó que la fecha para el otorgamiento de la escritura de venta y traspaso y para la constitución de la hipoteca sobre el precio aplazado, referida en el convenio como "la fecha de cierre" serían 90 días a partir de la fecha del acuerdo. La escritura se otorgaría ante el Notario, y en el sitio y fecha designados por "la compradora", quien debería avisar a los vendedores con diez días de anticipación. Todos los gastos notariales y el pago de sellos y de inscripción en el Registro de la Propiedad, tanto en cuanto a la venta como en cuanto a la hipoteca, se asumirían por partes iguales entre los vendedores y la compradora.

Después de otros pactos y convenios se acordó que en consideración única del pago de los $135,000 por "la compradora" a los vendedores a la fecha de cierre y al otorgarse la escritura de venta, los vendedores liberarían de la hipoteca sobre el precio aplazado, o en el momento posterior en que lo pidiera la compradora, una parcela de terreno con un área de 35 cuerdas cuya localización sería determinada exclusivamente por la compradora. Se convino que la compradora tendría el derecho de traspasar o ceder todos sus derechos bajo este acuerdo o parte del mismo a cualquier persona, sin incurrir en responsabilidad por razón de tal cesión. Las escrituras a otorgarse a la fecha de cierre deberían contener todos y cada uno de los pactos incluidos en el documento. Acordaron las partes que dicho documento constituía un acuerdo obligatorio de comprar y de vender la propiedad objeto del mismo *sujeto solamente a las condiciones estipuladas*. Se repitió que en caso de que la compradora dejara de adquirir, después de venir obligada a comprar según el convenio, la mencionada cantidad de $10,000 correspondería a los vendedores como daños líquidos y penalidades. A la fecha del otorgamiento de la escritura de venta los vendedores pagarían en su totalidad a las personas que correspondiera los cargos de comisión a serles pagados por sus servicios en un 5% del total del precio de venta. En caso de que la compradora no adquiriera la propiedad, el acuerdo quedaría rescindido y sin valor, sin ninguna otra obligación o responsabilidad entre las partes, sujeto sólo a la entrega a los vendedores de esa cantidad de $10,000. Este documento, que obligaría a los sucesores o cesionarios de las partes, aparece firmado por los esposos Mario Marcantoni y Gladys Massanet Marcantoni como vendedores y como compradora por la Cariblantic Realty Corp., representada por Herbert Werner.

Fechado 7 de marzo de 1964 los esposos Marcantoni recibieron un cable suscrito por William Freeman y Cariblantic Realty Corp., representada por William Freeman, anuncián-

doles que William Freeman era el único accionista y oficial principal de Cariblantic Realty Corp; que dicha corporación estaba lista a asumir el título de la propiedad de acuerdo con el contrato de octubre 31 de 1963; que éste era el aviso con diez días de antelación que requería el contrato, fijando la fecha de cierre en marzo 18 de 1964, en la oficina de su abogado José Luiña. Informaba Freeman que él personalmente estaría presente y que nadie más que él estaba autorizado a actuar a nombre de Cariblantic; que la autoridad de Werner quedó limitada a comparecer en el documento y que Werner no tenía autoridad adicional para actuar en representación de Cariblantic y del suscribiente Freeman.

En marzo 13, 1964 Herbert S. Werner, Robert Berk y Cariblantic Realty Corp. como demandantes y alegando ser los únicos accionistas de la corporación interpusieron demanda contra William Freeman, Mario Marcantoni y su esposa Gladys Massanet en la Sala de San Juan del Tribunal Superior. Después de referirse al documento de 31 de octubre de 1963 y a muchos de sus pactos, alegaron que la fecha de cierre era el 28 de abril de 1964; que bajo las disposiciones de dicho contrato Cariblantic venía obligada a avisar a los esposos Marcantoni la "fecha de cierre" con 10 días de anticipación; que en 7 de marzo de 1964 el codemandado William Freeman había avisado a los esposos mediante cable desde la ciudad de Nueva York que él era el único accionista y principal oficial de la corporación Cariblantic Realty Corp. y dio un aviso de diez días para la fecha de cierre en 18 de marzo de 1964 y en la oficina del Lcdo. José Antonio Luiña; que Freeman anunciaba que él comparecería al acto como única persona autorizada a actuar a nombre de la corporación; que William Freeman no es ni accionista ni oficial de Cariblantic ni está autorizado por dicha corporación para actuar a nombre suyo en ninguna ni en esta transacción; que la Junta de Directores de Cariblantic, en 11 de marzo de 1964, había autorizado a Werner para que diera a los esposos Marcantoni

el aviso requerido sobre la hora y sitio de cierre de la transacción fijándola para el 23 de marzo de 1964 a las 10 A.M. en las oficinas de los abogados McConnell, Valdés y Kelley; y que Werner envió a los codemandados Marcantoni y esposa la referida notificación en cumplimiento de la resolución corporativa.

Se pidió al Tribunal que dictara sentencia adjudicando y determinando que los únicos accionistas de la corporación Cariblantic Realty Corp. son los codemandantes Herbert S. Werner y Robert Berk y que Freeman no es accionista ni oficial de la corporación; determinándose que la única persona legalmente autorizada por la corporación para llevar a efecto el referido documento con los codemandados Marcantoni era el codemandante Herbert S. Werner, siendo también la única persona autorizada para otorgar la documentación necesaria; determinando que cualquier actuación pasada, presente o futura de William Freeman a nombre de la corporación fue completamente nula; ordenándole a Freeman que desistiera y se abstuviera de tomar cualquier acción futura a su nombre o en representación de la corporación con respecto a las propiedades envueltas, ni a efectuar cualquier clase de transacción, no importa su naturaleza, que se relacionara con las propiedades objeto de litigio. En cuanto a los codemandados esposos Marcantoni, se solicitó el cumplimiento específico y que el Tribunal determinara que dichos codemandados venían obligados bajo el contrato de octubre 31, 1963 a comparecer el lunes 23 de marzo de 1964 a las 10 A.M., a las oficinas de los abogados McConnell, Valdés y Kelley para que, como vendedores, otorgaran la necesaria documentación a fin de que la corporación Cariblantic Realty Corp., quien estaría "representada en dicho acto únicamente por el codemandante Herbert S. Werner", adquiriera por compra las propiedades objeto de este litigio, todo ello de conformidad con las cláusulas y condiciones del contrato de 31 de octubre de 1963. La demanda está jurada.

En 15 de marzo de 1964, dos días de interpuesta la demanda, comparecieron los demandantes en solicitud sobre aseguramiento de sentencia. (¹) Alegaron que por información que creían cierta tenían el fundado temor de que Freeman se propusiera celebrar la transacción de cierre en la mañana del 16 de marzo de 1964; que de realizarse tal acto la acción radicada podría resultar académica y sufrir los demandantes daños irreparables; que interesaban el aseguramiento de la efectividad de la sentencia mediante una orden dirigida a todos y cada uno de los demandados para que desistieran y se abstuvieran de efectuar cualquier transacción relacionada con los terrenos objeto del pleito y de otorgar cualquier documento hasta futura orden del Tribunal. Que los demandantes no tenían tiempo para prestar fianza de ser ésta necesaria; que la orden a dictarse por el Tribunal se hiciera efectiva hasta el 18 de marzo de 1964 a las 2 P.M., disponiéndose que si para dicha fecha los demandantes no hubieren prestado fianza la misma quedaría sin efecto pero si para dicha fecha los demandantes hubieren prestado fianza la providencia continuara en efecto hasta futura orden del Tribunal. Que los demandantes sufrirían perjuicios y pérdidas irreparables antes de que pudiera celebrarse una vista con respecto a dicha moción. La moción fue acompañada con declaraciones juradas sobre los extremos expuestos.

Fechada el mismo día 15 de marzo de 1964 la Sala de San Juan del Tribunal Superior dictó sin vista la siguiente orden contra Freeman y contra los esposos Marcantoni:

"Vista la Moción sobre Aseguramiento de la Efectividad de la Sentencia radicada por la parte demandante con esta misma fecha; vistas las alegaciones de la demanda jurada; y vistas las declaraciones juradas que se unen y se hacen formar parte de la Moción A y B, el Tribunal por la presente accede a lo solicitado por la parte demandante y,

---

(¹) La moción tiene sello de radicación de 15 de marzo, un domingo.

en consecuencia, le ordena al demandado William Freeman, también conocido por William P. Frieman, William P. Freeman y William Patrick Freenan, y a los co-demandados Mario Marcantoni y Gladis-Massanet de Marcantoni, que desistan y se abstengan de:

i) llevar a cabo el cierre ("closing") de las transacciones de la compraventa de la propiedad a que se refiere la demanda radicada en este caso;

ii) efectuar cualquier clase de transacción entre sí o a través de cualquier corporación, entidad o tercera persona, con respecto a las propiedades a que se refiere la demanda radicada en este caso.

Esta orden sera efectiva hasta el miércoles 18 de marzo de 1964 a las 2:00 P.M., disponiéndose que si para dicha fecha y hora los demandantes hubieran prestado una fianza en la suma de $10,000 para responder a la parte demandada de los perjuicios que se le puedan irrogar, entonces esta orden continuará en vigor hasta futura orden del Tribunal; disponiéndose, además, que si para dicha fecha y hora los demandantes no hubieren prestado la mencionada fianza, entonces esta orden quedará sin efecto el referido día 18 de marzo de 1964 a las 2:00 P.M.

Notifíquese a cada uno de los demandados para que bajo apercibimiento de desacato al Tribunal, den estricto cumplimiento a las disposiciones de la presente orden.

DADA en San Juan, Puerto Rico, hoy día 15 de marzo de 1964."

Esta orden fue así diligenciada:

"CERTIFICADO DE DILIGENCIAMIENTO DEL ALGUACIL

CERTIFICO: Que a las 12:05 de la madrugada del día 16 de marzo de 1964, lunes, recibí la orden precedentemente transcrita y a las 12:50 A.M. notifiqué personalmente al codemandado, Sr. William Freeman, dejando en su poder, en el Hotel SAN JUAN, San Juan, Puerto Rico, copia de la moción, copia de los exhibits y copia en inglés y en español de dicha orden, haciendo al Sr. Freeman todas las advertencias especificadas en la misma.

Certifico, además, que a la 1:40 de esta misma mañana notifiqué personalmente con copia de la expresada orden al codemandado Mario Marcantonio [sic], dejando ésta en su poder en su

residencia de 'El Palmar', Isla Verde, advirtiéndole también sobre el contenido de la misma.

San Juan, P.R., a 16 de marzo de 1964.

(Fdo.) Luis F. Rivero Otero
Luis F. Rivero Otero
Alguacil General"

El demandado William Freeman fue emplazado de la demanda el 16 de marzo de 1964 a las 12:50 de la madrugada en San Juan. El 19 de marzo compareció al Tribunal sobre la orden y alegó que mediante dicha orden de aseguramiento preventivo se había detenido una transacción en que estaba envuelta la cantidad de $793,650 con la prestación de una fianza de sólo $10,000; que ello podría causarle daños por $600,000 y solicitaba que la referida fianza se elevara a esta cantidad. Invocó su derecho a que se celebrara una vista para ser oído en cuanto a la orden de entredicho y sobre la fianza. A la vez, refiriéndose al requerimiento hecho por los demandantes para el cierre de la transacción el 23 de marzo de 1964, Freeman pedía al Tribunal que dictara orden de entredicho para que los esposos codemandados se abstuvieran también de asistir a dicho acto.

En 8 de abril de 1964 Freeman radicó otra moción en el Tribunal insistiendo en su derecho a que se prestara una fianza mayor de $10,000 en vista del perjuicio que la orden de entredicho podría causarle, insistiendo en que dicha orden fue dictada sin ser oído y pedía señalamiento a la mayor brevedad posible de ésta y de su moción del 19 de marzo. En igual fecha, 8 de abril de 1964, Freeman contestó la demanda e interpuso contrademanda.

En ese estado y estando en vigor la orden de entredicho anteriormente transcrita, el 14 de abril de 1964 los demandantes radicaron una solicitud de nombramiento de síndico. Alegaron que de acuerdo con el contrato de 31 de octubre de

1963 el último día para llevar a cabo el cierre de la transacción lo era el 28 de abril de 1964; "quedando los codemandados Mario Marcantoni y Gladys Massanet de Marcantoni liberados de su obligación de vender las propiedades en cuestión a la codemandante Cariblantic Realty Corp. si la transacción no se efectúa en o antes del referido día 28 de abril de 1964." Que según la demanda jurada el codemandante Werner había dado el aviso correspondiente a los codemandados Marcantoni y esposa para el cierre de la transacción el lunes 23 de marzo de 1964 en las oficinas de los abogados McConnell, Valdés y Kelley y que en 20 de marzo de 1964 dichos codemandados esposos Marcantoni habían notificado por escrito que no comparecerían al acto del día 23 por razón de encontrarse el caso en corte y estar varias personas y entidades reclamando el derecho de adquirir las propiedades en cuestión. Que una vez resuelto dicho asunto por el Tribunal si la opción fuera todavía válida por estar dentro del término de expiración y por haber cumplido con todos los requisitos exigidos en dicha opción la persona o entidad favorecida por el Tribunal, no tendrían inconveniente en firmar las escrituras en la fecha y hora que se designara. Alegaron los demandantes que de no efectuarse "el cierre de la transacción" en o antes del día 28 de abril de 1964 los codemandados Mario Marcantoni y esposa "habrán de quedar relevados de su obligación de vender a la corporación demandante Cariblantic Realty Corp., las fincas en cuestión y los demandantes sufrirían graves e irreparables pérdidas y daños", resultando académico el pleito. (²) Alegaron que los demandantes tenían en su posesión el dinero necesario para la adquisición de las propiedades y para pagar a los esposos demandados el precio de venta. Con esas alegaciones solicitaron el nombramiento de un síndico y sugirieron

(²) Las manifestaciones de los esposos codemandados a que se hace referencia están contenidas en una carta firmada Alejandro Corchado, dirigida a los abogados McConnell, Valdés y Kelley.

que se nombrara al Lcdo. Roberto J. Matos, (1) para que designara y notificara a los codemandados esposos Marcantoni la fecha, hora y sitio para el cierre de la transacción; (2) para que compareciera en dicha fecha, hora y sitio a nombre y representación de la corporación Cariblantic Realty Corp. a otorgar los documentos que fueren necesarios "a fin de dejar consumada la transacción contemplada en el Contrato de Promesa de Compraventa de fecha 31 de octubre de 1963", de conformidad con los pactos y términos de dicho contrato; (3) para que a nombre y representación de Cariblantic recibiera "de manos de los codemandados Herbert R. Werner y Robert Berk y pagara a los esposos Marcantoni-Massanet la suma de $135,000" a ser entregada en el acto del otorgamiento a los vendedores y para que recibiera de dichos codemandantes y desembolsara cualquier suma adicional necesaria "para el otorgamiento e inscripción de los documentos pertinentes"; (4) para que designara el notario que habría de encargarse de la preparación y otorgamiento de los documentos necesarios para el cierre de la transacción; (5) para que tomara posesión, conservara y custodiara las propiedades a ser adquiridas en dicha transacción, todo ello sujeto a ulteriores órdenes del Tribunal, entendiéndose que dichas propiedades permanecerían en *custodia legis* sujetas a cualquier ulterior determinación a ser hecha por el Tribunal respecto a las mismas; (6) para que tomara cualquier otra acción necesaria "a fin de consumar la transacción en cuestión", a nombre y representación de Cariblantic Realty Corp. Solicitaron los demandantes una orden dirigida a los codemandados esposos Marcantoni para que tomaran la siguiente acción: (1) para que comparecieran conjuntamente en la fecha, hora y sitio que designara y les notificara el síndico y otorgaran los documentos necesarios para dejar consumada la transacción de acuerdo con "el Contrato de Promesa de Compraventa de fecha 31 de octubre de 1963"; (2) para que recibieran en dicho acto la suma de $135,000 de manos del síndico como

pronto pago por la venta de las propiedades y adquirieran simultáneamente hipoteca en garantía del aplazado y para que tomaran cualquier otra acción necesaria y conveniente "para la adquisición de las propiedades por Cariblantic Realty Corp. a través del Síndico". Se solicitó que se eximiera a los demandantes y al síndico de prestación de fianza.

A la moción sobre nombramiento de síndico se opuso Freeman y objetó la petición dirigida a los esposos Marcantoni para que comparecieran a otorgar la escritura, alegando que ello equivalía darle la razón a los demandantes sin haber visto el caso en los méritos, y con la mera alegación de que tenían derechos en la corporación Cariblantic. Alegó que en 13 de marzo de 1964 había firmado un documento transfiriendo sus derechos y los de Cariblantic a favor de Fredic H. Gould quien había adquirido los mismos a nombre y representación de Gould Properties, Inc. por lo que en ese momento Cariblantic no era ya dueña del contrato de opción, y que de ordenarse por el Tribunal que se transfiriera la propiedad a cualquier otra persona que no fueran los actuales dueños del contrato de opción (Fredic H. Gould) ello sometería a Freeman a un caso de daños y perjuicios por parte del dueño de la opción. Alegó que desde que se radicó la demanda en 13 de marzo de 1964 había estado tratando de que el Tribunal le diera la oportunidad de ser oído sin que hasta esa fecha se le hubiera dado tal oportunidad; que la fianza de $10,000 prestada por los demandantes resultaba exigua a la luz de los perjuicios que él podía sufrir con la orden de entredicho, estando envuelta una transacción de $793,650; que la situación de este caso no justificaba en derecho el nombramiento de un síndico y que el codemandante Werner es sobrino de Freeman y que fue comisionado por él para comparecer en el contrato de opción únicamente como agente de Cariblantic según se desprende del propio contrato, del cual no aparece que Werner fuera ni oficial ni accionista de la corporación.

La moción sobre nombramiento de síndico se discutió en la tarde del 20 de abril de 1964. Al día siguiente, 21 de abril, se decretó la sindicatura en los términos siguientes:

"ORDEN

Con vista de la Solicitud de Nombramiento de Síndico radicada por la parte demandante, el Tribunal señaló el día 20 de abril de 1964 a las 2:00 P.M. para oir a las partes con relación a dicha solicitud.

Comparecieron a dicha vista los demandantes representados por sus abogados, y el demandado William Freeman, por conducto de su abogado, estando también el codemandado Mario Marcantoni. Después de oir a las partes en dicha vista, el Tribunal ha decidido declarar con lugar y por la presente declara con lugar la Solicitud de Nombramiento de Síndico de los demandantes.

En su consecuencia, este Tribunal designa Síndico al Lcdo. Roberto J. Matos, para que como oficial de este Tribunal tome la siguiente acción:

i) Para que designe y notifique a los codemandados Mario Marcantoni y su esposa Gladys Massanet de Marcantoni, la fecha, hora y sitio para el cierre de la transacción de compraventa y constitución de hipoteca contemplada en el Contrato de Promesa de Compraventa fechado 31 de octubre de 1963 (Anexo B de la demanda).

ii) Para que comparezca en dicha fecha, hora y sitio a nombre y representación de la corporación Cariblantic Realty Corp. a otorgar los documentos que fueren necesarios a fin de dejar consumada la transacción contemplada en el referido Contrato de. Promesa de Compraventa de fecha 31 de octubre de 1963, de conformidad con los plazos, términos, pactos y condiciones convenidos en dicho contrato.

iii) Para que a nombre y representación de la corporación Cariblantic Realty Corp. reciba de manos de los co-demandantes Herbert S. Werner y Robert Berk y pague a los esposos Marcantoni-Massanet la suma de $135,000, o cualquier otra cantidad que de acuerdo con los términos del Contrato de Promesa de Compraventa deberá ser entregada en el acto del otorgamiento de los documentos a dichos esposos, como vendedores; y para que reciba de manos de dichos demandantes y desembolse cualquier

suma adicional necesaria para el otorgamiento e inscripción de los documentos pertinentes.

iv) Para que designe el notario que habrá de encargarse de la preparación y otorgamiento de los documentos necesarios para el cierre de la transacción.

v) Para que tome posesión, conserve y custodie las propiedades a ser adquiridas en dicha transacción, todo ello sujeto a ulteriores órdenes del Tribunal; entendiéndose que dichas propiedades permanecerán en "custodia legis" sujetas a cualquier ulterior determinación que tenga a bien hacer este Tribunal con respecto a las mismas.

vi) Para que tome cualquier otra acción que sea necesaria o conveniente a fin de consumar la transacción en cuestión, a nombre y representación de la Cariblantic Realty Corp.

Se le ordena a los codemandados Mario Marcantoni y Gladys Massanet de Marcantoni que, sin pretexto alguno, tomen la siguiente acción:

i) Que comparezcan conjuntamente en la fecha, hora y sitio que designe y les notifique el Síndico a otorgar y otorguen los documentos necesarios para dejar consumada la transacción contemplada en el Contrato de Promesa de Compraventa de fecha 31 de octubre de 1963 (Anexo B de la demanda) de conformidad con los términos, pactos y condiciones convenidos en dicho contrato.

ii) Que reciban en dicho acto, de manos del Síndico, la suma de $135,000 ó cualquier otra cantidad que de acuerdo con los términos del contrato deban recibir como pronto pago de las propiedades en cuestión; y adquieran simultáneamente hipoteca en garantía del precio aplazado, todo ello conforme se estipula en el susodicho Contrato de Promesa de Compraventa otorgado el 31 de octubre de 1963.

iii) Que tomen cualquier otra acción que sea necesaria o conveniente para la adquisición de las propiedades en cuestión por Cariblantic Realty Corp., a través del Síndico, de conformidad con las estipulaciones del Contrato de Promesa de Compraventa fechado 31 de octubre de 1963.

Se dispone expresamente, que de negarse los co-demandados Mario Marcantoni y su esposa Gladys Massanet de Marcantoni a efectuar el traspaso de las propiedades en cuestión, en la forma anteriormente dispuesta, entonces dicho traspaso será efectuado, en la fecha, hora y sitio que designe el Síndico, por el Alguacil de este Tribunal, quien por la presente queda facultado para

efectuar el mismo a nombre y representación de los vendedores Mario Marcantoni y su esposa Gladys Massanet de Marcantoni, todo ello de conformidad con los términos, cláusulas, pactos y condiciones del Contrato de Promesa de Compraventa.

Se dispone expresamente que el traspaso de las propiedades a nombre de Cariblantic Realty Corp. que por la presente se ordena, estará sujeto a cualquier derecho que pueda establecer ante el Tribunal cualquier tercera persona que hubiere adquirido válidamente, por cesión de Cariblantic Realty Corp., los derechos de ésta con respecto al Contrato de Promesa de Compraventa del 31 de octubre de 1963. De determinarse por este Tribunal, después de oir a las partes, que alguna tercera persona adquirió los derechos de la Cariblantic Realty Corp. en el referido Contrato de Promesa de Compraventa, entonces el Tribunal le ordenará al Síndico que traspase dichas propiedades a dicha tercera persona, y se tomarán, por el Tribunal, aquellas medidas adicionales que sean procedentes en derecho, para la protección de las partes y la resolución final del caso.

El Tribunal ha exigido de los demandantes la prestación de una fianza en la suma de Veinte Mil Dólares ($20,000) para responder a los demandados de los daños y perjuicios que pueda irrogárseles con motivo de la expedición de la presente Orden de aseguramiento de Sentencia, si resultare en definitiva que la misma era improcedente, la cual ha sido prestada por los demandantes y aprobada por este Tribunal, con esta misma fecha. Habiendo cumplido los demandantes con dicho requisito y habiendo radicado en autos el Lcdo. Roberto J. Matos su aceptación al nombramiento de Síndico, esta Orden tendrá efecto inmediato.

San Juan, P.R. a 21 de abril de 1964."

En 28 de abril de 1964 comparecieron los codemandados esposos Marcantoni a través del Lcdo. G. Meléndez Carrucini y alegaron que el 21 de abril([3]) el síndico Lcdo. Roberto J. Matos les había citado mediante una comunicación para que comparecieran el viernes 24 de abril a otorgar el contrato de compraventa ya aludido; "que en vista de la premura con que se citó a los co-demandados", los codemandados solicitaron del

---

([3]) De los autos aparece que la fianza de $20,000 exigida fue aprobada el 22 de abril, un día después.

síndico que pospusiera el otorgamiento por un día más, o sea para el sábado 25 de abril, "a los fines de que los co-demandados tuvieran tiempo suficiente para estudiar y analizar la escritura antes de su otorgamiento"; que el síndico se negó a ello y se reafirmó en que el otorgamiento fuera el 24 de abril de 1964 a las 4 de la tarde; "que no fue hasta el viernes 24 de abril, a la 1:00 de la tarde que se dejó en la oficina del contador de los co-demandados, señor Alejandro Corchado, la copia final del mencionado documento"; que el 23 de abril en horas de la noche recibieron un telegrama del abogado de Freeman informando haber interpuesto recurso de apelación y revisión ante el Tribunal Supremo de la orden del 21 de abril y les advertía que no firmaran documento de traspaso; que en 22 de abril de 1964 ellos habían sido emplazados de una demanda radicada contra ellos por Fredic Realty Corporation reclamando dicha corporación ser la dueña (cesionaria) de la opción para la compra de la propiedad; que en vista de los sucesos narrados los esposos codemandados estaban en un estado de confusión y tenían serias dudas en cuanto a la acción a tomar por ellos sin incurrir en responsabilidad, sin disponer de tiempo suficiente para hacer un estudio de la situación. Que en vista de que se dispuso que el Alguacil actuara en representación de los codemandados, ante esa situación se negaron a firmar el referido documento de traspaso sin que hubiera sido su intención desacatar la orden del Tribunal de 21 de abril.

En la misma fecha, abril 28, hay radicado un informe del síndico que hace referencia a una reunión con Marcantoni y su abogado y los abogados de los demandantes el 23 de abril de 1964. Que después de explicarles el propósito de la sindicatura y discutirse el proyecto de escritura, les informó que la misma se firmaría al día siguiente a las cinco de la tarde; que el abogado de los esposos codemandados le dijo que si esa noche le enviaban copia de la escritura estaría dispuesto a asistir al otorgamiento; que el viernes 24 de abril acudió a

la oficina de los abogados de los demandantes a las tres de la tarde para otorgamiento; que esperó a los esposos hasta las seis de la tarde y éstos no se presentaron; le informaron que estaban en dudas sobre el telegrama recibido del abogado de Freeman apelando de la orden; que posteriormente el Sr. Marcantoni, acompañado del Sr. Corchado, se presentó en la oficina e informó que no podía firmar la escritura y que por teléfono, el Lcdo. Meléndez, abogado de los esposos, le informó que sus clientes no habrían de firmar los documentos hasta el lunes en cuya fecha se proponían solicitar del Tribunal Superior un remedio; que su propósito era proteger los intereses de sus clientes los esposos Marcantoni por los efectos de un telegrama recibido por ellos; que dicho telegrama fue discutido; que al insistir el Lcdo. Meléndez en no firmar los documentos hasta después de solicitar algún remedio al Tribunal el síndico le informó que proseguiría con el otorgamiento y que no esperaría que los esposos pidieran remedio al Tribunal; que el Sr. Marcantoni reiteró su intención de no firmar y se retiró, otorgándose la escritura por el Alguacil en su representación. Hay en los autos un telegrama del Lcdo. Celestino Morales fechado el 23 de abril de 1964 dirigido al síndico informándole que Freeman había radicado recurso de apelación y recurso de *certiorari* ante el Tribunal Supremo e impugnaba en esas circunstancias la autoridad del síndico para actuar.

La escritura mencionada fue otorgada en dicho día 24 de abril a las 11:50 P.M. en San Juan ante en Notario Ramón Morán Loubriel, asumiendo, por mandato del Tribunal, el Alguacil del mismo, la representación de los esposos Marcantoni, como vendedores, y la Cariblantic Realty Corp., como compradora, representada por el síndico. Entre las cláusulas y condiciones se hizo constar que la venta se efectuaba por $793,650; que en ese acto la compradora satisfacía a los vendedores la cantidad de $58,281.38 que se entregaba al Alguacil para ser depositada en el Tribunal; que la compra-

dora "a requerimiento de los Vendedores" retenía en su poder la cantidad de $37,125 para satisfacer los honorarios o comisión de los corredores; que la compradora "a requerimiento de los Vendedores" retenía la cantidad de $30,000 para pagar en su día las hipotecas a favor de la Puerto Rico Production Credit Association; y la compradora retenía otras cantidades: $1,500 para satisfacer la diferencia de una hipoteca; $1,713 para el pago de la prima del seguro del título de las propiedades; $4,922.87, la mitad de los derechos de rentas internas y gastos de la escritura, de su inscripción en el Registro y de honorarios de abogado; $206.75 por concepto de honorarios de abogado de la cancelación de dos hipotecas; $551 derechos de rentas internas y honorarios de abogado para cancelación de unos arrendamientos y $700 para el pago de contribuciones reales, apareciendo los vendedores aceptando el pago de la suma inicial de $135,000 en la forma descrita y concediendo eficaz carta de pago. Se retuvo por la compradora $96,000 para el pago de ciertos gravámenes y la diferencia hasta $562,650 se dispuso que se pagaría en 5 plazos anuales consecutivos de $112,530 de principal cada uno. En la misma escritura la compradora constituyó hipoteca en garantía del precio aplazado. ([4])

Surge de esta escritura que el título fue obtenido por Cariblantic Realty Corp. representada por el síndico, y no por el síndico. Por tal razón el síndico no tomó ni podía tomar posesión de la propiedad para mantenerla en *custodia legis* y una vez que otorgó la escritura aparentemente ninguna otra actuación o gestión le correspondía hacer como tal síndico.

Fechado 24 de abril y notificado personalmente en esa fecha, pero sellado en abril 27, ([5]) hay radicado un escrito de apelación de Freeman contra la resolución nombrando al síndico.

---

([4]) Ver la situación según el contrato, sobre todo los $30,000 de esa hipoteca y los $135,000.

([5]) El documento tiene dos sellos, uno de abril 27, y otro de mayo 4.

En 27 de abril se radicó en este Tribunal por Freem- 1 una solicitud de *certiorari* para revisar la orden decretan la sindicatura. El mismo día 27 de abril de 1964, el Tribunal expidió *certiorari* y dispuso, en auxilio de su jurisdicción, que quedaran suspendidos los efectos de la orden de 21 de abril de 1964 designando un síndico, hasta nueva orden del Tribunal. Al dictarse esta orden el lunes 27 de abril, ya se había otorgado en la noche del viernes 24 de abril la referida escritura. (6)

Impugna el peticionario la validez de la orden del 21 de abril de 1964 sobre nombramiento de síndico, y, consecuentemente, la de todas sus actuaciones. Sostiene que (1) los hechos alegados en la demanda no justifican ni dan margen al nombramiento de síndico en la forma en que lo hizo el tribunal recurrido; (2) que éste cometió error al ejercitar su discreción para el nombramiento asumiendo que tuviera facultad para hacerlo, al no dictar providencia alguna que protegiera a él y a terceras personas y al fijar una exigua fianza para cubrir los daños y perjuicios que se le pudieran ocasionar.

Por su parte sostienen los interventores que (1) de la demanda jurada y demás alegaciones surgía claramente el derecho de ellos a obtener el remedio concedido; (2) existía una seria controversia con respecto a quién o quiénes eran los que tenían derecho a adquirir el título de las propiedades inmuebles envueltas en la acción; (3) ningún otro remedio provisional, que no fuere la sindicatura concedida, hubiera sido efectivo para asegurar el cumplimiento de la sentencia; (4) tanto el peticionario como las terceras personas quedaron protegidos; y (5) que la orden del 15 de marzo de 1964,

---

(6) Copia certificada de la escritura de compraventa e hipoteca fue presentada—también antes de esa orden—para su inscripción en el Registro de la Propiedad. El 3 de julio de 1964, en este recurso, nos solicitó una orden dirigida al Registrador a los efectos de que denegara su inscripción o no tomara acción registral alguna hasta la resolución del presente recurso. Posteriormente, por voluntad del presentante, el documento fue retirado del Registro sin practicarse allí operación alguna.

sobre el primer aseguramiento de efectividad de sentencia fue acertadamente dictada.

Después de un detenido análisis de las curiosas circunstancias concurrentes desde el otorgamiento del convenio sobre promesa de venta de fecha 31 de octubre de 1963 y hasta el otorgamiento de la escritura pública definitiva sobre compraventa y constitución de hipoteca del 24 de abril de 1964, resolvemos que le asiste toda la razón al peticionario William Freeman en este recurso y que carece de toda validez, legalidad, eficacia y virtualidad jurídica y es absolutamente nula, la orden recurrida, de fecha 21 de abril de 1964, dictada en el pleito principal, sobre nombramiento del síndico Roberto Matos, y, desde luego, son inválidos, ilegales, ineficaces y nulos absolutamente, todos y cada uno de los actos, convenios y contratos realizados u otorgados por tal síndico, y, en particular, el contrato de compraventa y constitución de hipoteca que aparece formalizado mediante la escritura número cinco, el 24 de abril de 1964, ante el notario Ramón Morán Loubriel, en esta ciudad de San Juan. Expondremos a continuación los fundamentos principales que hemos tenido para determinarlo así.

Para el 21 de abril de 1964, ante el Tribunal Superior, Sala de San Juan, en la acción civil Núm. 64-1052, entre Herbert S. Werner y Robert Berk, como demandantes, y William Freeman, como demandado, estaba debidamente trabada una contienda judicial, pendiente de ventilarse y resolverse en sus méritos. En las palabras de los aquí interventores—pág. 21 alegato—". . . una controversia con respecto a quién es Cariblantic Realty Corp., es decir, si una corporación cuyo único accionista y dueño es el Peticionario Freeman o si es una corporación cuyos únicos accionistas y dueños son los Interventores Werner y Berk . . . una seria controversia con respecto a quién o quiénes eran los que tenían derecho a adquirir el título de la propiedad en cuestión."

Dos días después de presentada la demanda, o sea el 15 de marzo de 1964, a solicitud de los demandantes, se dictó una orden para asegurar la efectividad de la sentencia que pudiera dictarse a favor de ellos. Su texto completo lo dejamos transcrito a las págs. 8 y 9 que preceden. En virtud de esa orden se ordenó a los demandados William P. Freeman y a los esposos Marcantoni-Massanet

". . . que desistan y se abstengan de: i) llevar a cabo el cierre (closing) de las transacciones de la compraventa de la propiedad a que se refiere la demanda radicada en este caso; ii) efectuar cualquier clase de transacción entre sí o a través de cualquier corporación, entidad o tercera persona, con respecto a las propiedades a que se refiere la demanda radicada en este caso."

La moción se presentó para su consideración a un juez superior, en su hogar, a la medianoche del domingo 15 de marzo. Allí mismo se firmó por el magistrado y a las 12:50 A.M. se notificó por un alguacil general a Freeman, y a la una y cincuenta minutos de esa madrugada al codemandado Marcantoni, haciéndoseles a ambos "todas las advertencias especificadas en la misma."

El aseguramiento decretado constituye u opera como una prohibición de enajenar, cuya imposición, como remedio provisional, autorizan las Reglas 56.1 y 56.4 de Procedimiento Civil, 1958. Al ser notificada la orden a los allí demandados en la madrugada del 16 de marzo, desde entonces quedaron judicialmente interdictadas todas las facultades dominicales dispositivas de los esposos codemandados para "ejecutar cualquiera clase de transacción . . . con respecto a las propiedades a que se refiere la demanda" y también quedó paralizada la facultad adquisitiva de Freeman en relación con esos bienes. Así fue efectiva y firmemente asegurado el cumplimiento del fallo que en su día pudiera dictarse en esa acción a favor de Werner y Berk, puesto que esas propiedades, mientras durara el litigio, y se determinara finalmente quién o quiénes eran los únicos accionistas, dueños y oficiales de Cariblantic Realty

Corp., quedaban aisladas y fuera de la circulación y del tráfico de bienes inmuebles.

En esa situación procesal, estando pendiente el caso del juicio en sus méritos y maniatados e impedidos los demandados para realizar "cualquier clase de transacción . . . con respecto a las propiedades . . .", carecía de autoridad o poder judicial el tribunal recurrido para proceder a nombrar, a instancias de los demandantes, un síndico, con el propósito o fin primordial, entre otros de menor significación, de obligar por fiat judicial, a los dueños de las propiedades: *"al cierre de la transacción de compraventa y constitución de hipoteca contemplada en el Contrato de Promesa de Compraventa* fechado el 11 de octubre de 1963"; a otorgar los documentos que fueren necesarios a fin *"de dejar consumada la transacción contemplada* en el referido contrato . . . . de conformidad con los plazos, términos, pactos y condiciones convenidos en dicho contrato"; a recibir "de manos de los codemandantes Herbert S. Werner y Robert Berk la suma de $135,000 . . . como vendedores; y a recibir de manos de dichos demandantes y desembolse cualquier suma adicional necesaria *para el otorgamiento e inscripción de los documentos pertinentes"*; y con el fin de que dicho síndico tomara cualquier otra acción que sea necesaria o conveniente *a fin de consumar la transacción en cuestión* y, para que, en definitiva, de negarse a todo ello los esposos codemandados, el síndico hiciera el *traspaso*, en unión al alguacil, *"de conformidad con los términos, pactos y condiciones del Contrato de Promesa de Compraventa."*

Mediante el ejercicio de esos drásticos y extraordinarios poderes, en una etapa interlocutoria, prácticamente se realizó en la noche del 24 de abril de 1964 la ejecución anticipada o extemporánea de la sentencia final que en su día, y previos los indispensables trámites de ley, hubiera podido dictarse a favor de la parte demandante. El remedio así concedido y aplicado no tenía nada de preventivo o provisional. Por la vía del nombramiento de un síndico, se logró de hecho

el inoportuno cumplimiento específico de un contrato de promesa de venta, favoreciendo a una parte litigante cuyos derechos estaban siendo discutidos.

La aparente protección, en forma de condición, que en su penúltimo párrafo contiene la orden en favor de "cualquier tercera persona que hubiere adquirido válidamente, por cesión de Cariblantic Realty Corp.; los derechos de ésta respecto al contrato", puede significar que el traspaso que se haría *para consumar lo convenido* sería obligatorio, final y definitivo para las partes litigantes, y, por otro lado, operaba en dos direcciones: abría las puertas a "terceras personas" a quienes Werner y Berk, que alegan ser únicos *dueños* de la corporación, les cediera tales derechos.

La Núm. 56 de las Reglas de Procedimiento Civil de 1958, versa sobre Remedios Provisionales y sustituyó la Ley para Asegurar la Efectividad de las Sentencias de 1902. En su subdivisión 56.1, primera oración, dispone como principio general en esa materia: "En todo pleito, antes o después de sentencia, por moción del reclamante, *el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia.*" (Énfasis suplido.) Entre esas órdenes provisionales, según se provee en el resto de su texto, el tribunal podrá conceder el embargo, la prohibición de enajenar, la sindicatura y una orden para hacer o desistir de hacer cualesquiera actos específicos.

La base o fundamento jurídico de estas medidas preventivas o provisionales—que principalmente operan como una efectiva inmovilización, prohibición o impedimento de poder realizar cierta actividad o facultad que de no existir aquella traba, se verificaría libremente—surge de las reglas de conducta jurídico-moral que encierran los Arts. 1044, 1066, 1210, 1230 y 1811 de nuestro Código Civil, (7) y que forman

---

(7) Disponen estos artículos:
"Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos.— Código Civil, 1930, Art. 1044.

el principio de responsabilidad correlativa del deudor—dicho en su sentido lato—a pagar sus deudas ciertas y determinadas, líquidas o liquidables, exigibles por estar vencidas y vivas o subsistentes, diciéndose que con ellas no se priva al deudor de sus bienes o de cosa propia, sino que éstos pertenecen a sus acreedores.

No obstante el claro derecho a reclamar y obtener estas necesarias medidas provisionales que sólo se dan en funciones de garantía y seguridad de la efectividad o cumplimiento de la sentencia final que pueda definitivamente obtenerse, ellas pueden como hemos dicho, aunque interina o provisionalmente, constituir prácticamente, entre otras cosas: una expropiación procesal sin la debida compensación de bienes y derechos del deudor, una hipoteca judicial, una limitación absoluta del derecho de libre disposición y un desmerecimiento en valor de los bienes sujetos a ellas.

■ Ante esas serias consecuencias económicas, la Regla 56.1 establece principios generales con respecto a la concesión de remedios provisionales. Le da discreción al tribunal para concederlos o negarlos; se fijan como criterios en su concesión: (1) que sean provisionales; (2) que tengan el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar y (3) que se tomen en consideración los

---

"Será exigible desde luego toda obligación cuyo cumplimiento no dependa de un suceso futuro o incierto, o de un suceso pasado, que los interesados ignoren.

"También será exigible toda obligación que contenga condición resolutoria, sin perjuicio de los efectos de la resolución.—Código Civil, 1930, Art. 1066.

"Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley.—Código Civil, 1930, Art. 1210.

"Los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez.—Código Civil, 1930, Art. 1230.

"Del cumplimiento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros.—Código Civil, 1930, Art. 1811."

*intereses de todas las partes*, según lo requiera la justicia sustancial y las circunstancias del caso.

Como verdadera y pura medida provisional en función de protección y garantía, no aparece pedida ni ordenada. Lo fue para que tal síndico otorgara "los documentos que fueren necesarios a fin de dejar *consumada la transacción contemplada en el referido contrato* de promesa de compraventa . . . de conformidad con los plazos, términos, pactos y condiciones convenidos en dicho contrato", con . dinero a recibirse "de manos de los codemandantes Herbert S. Werner y Robert Berk" y que en parte sería pagado a los esposos Marcantoni-Massanet. A éstos, especialmente, se les obligaba, ordenaba y requería, para que conjuntamente otorgaran con tal síndico "los documentos necesarios para *dejar consumada la transacción contemplada* . . . de conformidad con los términos, pactos y condiciones convenidos en dicho contrato", y para que tomaran cualquier otra acción "que sea necesaria o conveniente para la adquisición de las propiedades en cuestión por Cariblantic Realty Corp., a través del Síndico, de conformidad con la estipulación del contrato de Promesa de Compraventa. . .". Se les requería para participar en una misión reservada al procedimiento de ejecución de la sentencia que se pedía en la demanda que se dictara en su día. Tan definitiva se consideró la compra de bienes de los esposos demandados con el dinero de Werner y Berk que se solicitó su inscripción en el Registro de la Propiedad.

El término "consumar" está definido, en su acepción forense, como: "Dar cumplimiento a un contrato o a otro acto jurídico que ya era perfecto." En su Enciclopedia del Idioma, nos dice Martín Alonso, que la "consumación" es la extinción y acabamiento total, y que "consumar" es "llevar a cabo de todo en todo una cosa."

Aquí la consumación decretada resultó más dañosa y perjudicial para los demandados, cuando de un cotejo del convenio de promesa de venta de octubre de 1963, con la es-

critura de venta e hipoteca otorgada por el síndico, claramente aparece que ésta no se realizó estrictamente "de conformidad con los términos, pactos y condiciones convenidos" en el contrato de promesa de venta. En la relación de hechos que exponemos al comienzo de esta ponencia, señalamos varios de los puntos en desacuerdo.

■ El nombramiento de un síndico, como remedio provisional, está específicamente condicionado y sujeto a que se demuestre "que ningún otro remedio provisional sería efectivo para asegurar la efectividad de la sentencia", según lo dispone la Regla 56.6 en su primera oración.

Dejamos dicho que los demandantes dos días después de iniciar el litigio, solicitaron "una orden decretando el aseguramiento de la efectividad de la sentencia que en su día pueda recaer a favor de la parte demandante", y que la misma se dictó el 15 de marzo de 1964, ordenando a los demandados que desistieran y se abstuvieran de "llevar a cabo el cierre ('closing') de las transacciones de la compraventa de la propiedad a que se refiere la demanda radicada en este caso" y "efectuar cualquier clase de transacción entre sí o a través de cualquier corporación, entidad o tercera persona, con respecto a las propiedades a que se refiere la demanda radicada en este caso." El alguacil notificó a Freeman y al esposo Marcantoni, personalmente, de tal orden, con copias de la misma y haciéndoles "todas las advertencias especificadas en la misma."

Después de ello, a los fines del aseguramiento y garantía de la efectividad de la sentencia que en su día pudiera recaer a favor de la parte demandante, era improcedente el nombramiento de tal síndico.

A la luz del alcance del aseguramiento de sentencia originalmente decretado, resultaba un pretexto o excusa pobre el alegar, para que se nombrara al síndico, que "de no efectuarse el cierre de la transacción en o antes del día 28 de abril de 1964, los 'vendedores' . . . habrán de quedar relevados de

su obligación de vender a la corporación demandante . . .
y los demandantes sufrirían graves e irreparables pérdidas
y daños, resultando académico el presente litigio instado por
los demandantes." En primer término, porque Freeman por
un lado y Werner y Berk por el otro, habían requerido a
tiempo a los esposos prometientes para cerrar la venta en la
forma convenida, y si bien es cierto que ellos no podían hacer
legalmente dos traspasos consecutivos y válidos de la misma
cosa, uno de esos dos avisos tenía que resultar válido y eficaz;
y en segundo término, porque si después de recibir tales avi-
sos se había decretado el aseguramiento para que desistieran
y se abstuvieran de llevar a cabo el cierre (*closing*) de las
transacciones de la compraventa, hubiera resultado inútil,
inválido e ineficaz cualquier cierre en contrario, quedando,
desde luego pendiente y en toda su fuerza, el derecho al cierre
mientras durara la prohibición o abstención. En otras pala-
bras, no siguió corriendo, ni pudo llegar a su vencimiento,
el término fijado para el cierre por virtud de la intervención
judicial por lo que no quedaron relevados los esposos code-
mandados de su obligación de vender.

Frente a los términos de la demanda, el aseguramiento
primitivo, constituía, y sigue constituyendo, el remedio pro-
visional más propio o adecuado. Por él, repetimos, quedaron
inmovilizadas todas las facultades dispositivas de los esposos
Marcantoni Massanet sobre su valiosas fincas cuya adquisi-
ción exclusiva disputan entre sí estos corredores de bienes raí-
ces, cada uno alegando que es el único dueño, funcionario,
oficial y legítimo representante de la corporación favorecida
por la promesa de venta.

En los comentarios a la Regla 56.1 hechos por el Comité
Consultivo de las Reglas de Procedimiento Civil, 1958, entre
otras cosas, se dijo:

"Como se puede ver dicha Ley aunque limitaba en esta dis-
posición los casos en que se dictaba el aseguramiento, no imponía
medidas específicas cuando éste procedía. En el texto propuesto

por nosotros el aseguramiento se puede decretar en cualquier pleito, y la medida que se tome es aquella que a solicitud de parte entienda el tribunal que es necesaria o conveniente para asegurar el resultado del pleito en términos de lo alegado en la reclamación. Es obvio, que si un demandante reclama una cosa determinada, la medida más adecuada es la prohibición de enajenar o gravar. Pero es posible que dentro del pleito surjan circunstancias que justifiquen el tomar otras medidas. Así ocurre con cualquier otra obligación cuyo cumplimiento se reclame.

"Por consiguiente, en el texto propuesto se enumeran las medidas específicas de aseguramiento contenidas en la Ley de Aseguramiento de Sentencias como en otras disposiciones legales sin relacionarlas a la naturaleza de la reclamación envuelta, y se le otorgan facultades al tribunal para tomar tanto las medidas enumeradas como cualesquiera otras que de acuerdo con las medidas del pleito estén justificadas. En casos obvios el tribunal aplicará las medidas reconocidas y tradicionales y en casos controversiales los litigantes discutirán la controversia en términos de lo justo y lo injusto, de lo adecuado o inadecuado de la medida según las circunstancias particulares del pleito y no términos de si la ley autoriza tal o cual medida en relación con la naturaleza de la obligación reclamada.

"Para cubrir los principios generales del texto propuesto se incorpora la norma que debe regir al tribunal en la consideración del proceso de aseguramiento. Esta norma es la que ha sentado nuestro Tribunal Supremo en los casos de *The National City Bank* v. *De la Torre*, 45 D.P.R. 626; *Carlo* v. *Corte*, 58 D.P.R. 889; y *Paz* v. *Bonet*, 31 D.P.R. 68. Se debe garantizar al reclamente pero no oprimir al demandado o causarle innecesarias dificultades en sus negocios."

Vemos pues que el nombramiento de un síndico, como medida provisional, está relegado a la categoría de remedio heroico a decretarse. Se concederá solamente en casos extremos, es decir cuando *quede demostrado* "que ningún otro remedio provisional sería efectivo para asegurar la efectividad de la sentencia."

La facultad de nombrar un síndico, aunque discrecional, no es arbitraria, es muy delicada y debe ejerci-

tarse con gran cautela, cuando extraordinarias circunstancias demanden la adopción de un remedio urgente, en casos absolutamente necesarios para proteger los intereses en litigio. Por regla general, bienes en poder del dueño no serán puestos, ni aun a su instancia, en manos de un síndico. Debe demostrarse la existencia real de un inminente peligro de perderse, dañarse o destruirse los bienes en litigio, para que los mismos puedan pasar a manos de un síndico como el mejor remedio para protegerlos y luego de haberse agotado todas las demás medidas provisionales aplicables. No se debe hacer uso de esa facultad en caso de duda, ni cuando hay probabilidades de que su ejercicio ocasione injusticia o perjuicio a los derechos privados. El nombramiento del síndico es un medio no un fin. (⁸)

■ Al aplicar estos remedios provisionales a la luz de nuestras reglas procesales, el tribunal no debe olvidarse que esas reglas se interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento. (⁹)

■ Lo que hemos dicho no significa que una vez concedido un remedio provisional de otra naturaleza para asegurar la efectividad de la sentencia, no pueda nombrarse un síndico para el mismo fin. Cuando se demuestre, como dis-

(⁸) Véanse: *Sucn. de Jesús* v. *Corte*, 65 D.P.R. 1 (1945); *Ramírez* v. *Corte*, 64 D.P.R. 530 (1945); *Valiente* v. *Registrador*, 63 D.P.R. 149 (1944); *Rodríguez* v. *Corte*, 59 D.P.R. 977 (1942); *United P.R. Bank* v. *Corte*, 44 D.P.R. 848 (1933); *P.R. Racing Corp.* v. *Corte*, 32 D.P.R. 871 (1924); *Schluter* v. *Texidor*, 26 D.P.R. 107 (1918); *Balasquide* v. *Rossy;* 18 D.P.R. 33 (1912).

(⁹) En 1937, cuando el senador Borah solicitaba del Congreso la aprobación de cierto proyecto de ley y refiriéndose a los casos de sindicaturas, pronunció las siguientes palabras que Moore reproduce a la pág. 1916 del Volumen 7 de su clásica obra, en el propio idioma del senador:

"We have found out through investigation that the heart of the misdoings with reference to receivership cases was that attorneys get together and agree upon large fees, agree upon a receiver, agree upon receivers' fees, agree upon the compensation of all parties concerned, and the result is that they simply divide up the carcass and there is nothing left for creditors or anybody else."

pone la Regla 56.6, que el remedio concedido no sería efectivo para asegurar la efectividad de la sentencia, puede solicitarse el nombramiento. El citado caso de *Ramírez* v. *Corte*, nos da un claro ejemplo de ello. En él, las circunstancias extraordinarias concurrentes demandaban, con suma urgencia, como remedio heroico y extremo, el nombramiento inmediato de un síndico, no obstante haberse trabado un embargo, pues éste a todas luces resultaba inefectivo.

*Se anulará la orden recurrida.*

El Juez Asociado Señor Belaval disintió en opinión separada.

—O—

Opinión Disidente del Juez Asociado Señor Belaval

San Juan, Puerto Rico, a 12 de marzo de 1965

La Cariblantic Realty Corporation, una persona jurídica organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, y los que alegan ser sus únicos accionistas, los co-demandantes Herbert S. Werner y Robert Berk, radicaron en el Tribunal Superior de Puerto Rico, Sala de San Juan, una acción civil contra el que alegaba también ser el único accionista de la Cariblantic Realty Corporation, William Freeman y los esposos Mario Marcantoni y Gladys Massanet de Marcantoni, quienes habían suscrito un contrato obligándose a vender a la Cariblantic Realty Corporation ciertas propiedades suyas ubicadas en el Municipio de Canóvanas, en cuya acción solicitaban de la Sala de San Juan, resolviera, que los únicos accionistas de la corporación co-demandante. Cariblantic Realty Corporation eran los co-demandantes Herbert S. Werner y Robert Berk, y resolviera además, que el co-demandado William Freeman, no era accionista ni oficial de la corporación co-demandante Cariblantic Realty Corporation.

La necesidad de esta declaración judicial proviene de una cláusula del contrato firmado el día 31 de octubre de 1963, entre los esposos Marcantoni Massanet y el agente de la corporación co-demandante Cariblantic Realty Corporation, a su vez co-demandante Herbert S. Werner, en cuya cláusula se convino, que la escritura de compraventa cerrando el negocio se firmaría el 29 de enero de 1964, fecha que posteriormente fue prorrogada hasta el 28 de abril de 1964.

El día 7 de marzo de 1964, el co-demandado William Freeman envió desde la ciudad de Nueva York, un cable a los esposos Marcantoni Massanet en el cual le informa que dicho co-demandado Freeman era el único accionista y principal oficial de la corporación co-demandante Cariblantic Realty Corporation, la cual estaba lista para adquirir el título de las propiedades cubiertas por el contrato del 31 de octubre de 1963 y escogiendo el 18 de marzo de 1964 y la oficina del Lic. José Antonio Luiña como la fecha y el sitio para el cierre del negocio; a su vez, el día 11 de marzo de 1964, la co-demandante Cariblantic Realty Corporation autorizó al co-demandante Herbert S. Werner a enviar a los esposos Marcantoni Massanet una comunicación en la cual le informaban a dichos esposos que la fecha, hora y sitio de cierre del negocio acordado, sería el lunes, 23 de marzo de 1964, a las diez de la mañana en las oficinas de los abogados McConnell, Valdés y Kelley. Como se ve, el co-demandado Freeman requería de los esposos Marcantoni Massanet que le vendieran a él como único accionista, el 18 de marzo de 1964 la propiedad objeto del contrato de 31 de octubre de 1963 y los co-demandantes Herbert S. Werner y Robert Berk, requerían que le vendieran a ellos, como únicos accionistas, el día 23 de marzo de 1964, la misma propiedad. Por otro lado, existía la posibilidad que la controversia entre las partes no pudiera solucionarse antes del 28 de abril de 1964 y el compromiso de compraventa quedara sin efecto.

Es por esta razón, que el 15 de marzo de 1964, se solicita por los demandantes, mediante una moción de aseguramiento, la expedición de una orden dirigida a todos y cada uno de los demandados para que desistan y se abstengan de efectuar cualquier transacción, de la naturaleza que sea, relacionada con los terrenos objeto de la controversia, y específicamente para que desistan y se abstengan de otorgar cualquier documento necesario para la compraventa de dichos terrenos, orden que fue expedida en los términos solicitados, el mismo día 15 de marzo de 1964. Como dato curioso conviene destacar que en la contestación a la demanda radicada por el co-demandado Freeman el día 8 de abril de 1964, se le informa al Tribunal que, con fecha 13 de marzo de 1964, o sea, dos días antes de solicitarse la orden de aseguramiento, y en la ciudad de Nueva York, la Cariblantic Realty Corporation le había transferido mediante endoso al señor Fredic Gould, el contrato de opción o compromiso de compraventa de que antes se ha hablado.

Posteriormente, ante la posibilidad de que transcurriera el día 28 de abril de 1964, sin que el derecho a obtener los terrenos quedara totalmente dilucidado, se solicitó por los demandantes el nombramiento de un síndico, señalándose una vista, con el fin de oir a las partes sobre dicha solicitud, para el 20 de abril de 1964. Después de oir a las partes, el 21 de abril de 1964, la ilustrada Sala sentenciadora decretó el nombramiento de un síndico, designó al Lic. Roberto J. Matos como síndico y le instruyó, entre otras cosas, a notificar a los co-demandados Mario Marcantoni y su esposa señora Gladys Massanet de Marcantoni, la fecha, hora y sitio para el cierre del negocio acordado en el contrato de Promesa de Compraventa de 31 de octubre de 1963; a comparecer en dicha fecha, hora y sitio a nombre de la Cariblantic Realty Corporation a otorgar los documentos que fueren necesarios a fin de dejar consumado el negocio acordado; a recibir, a nombre y en representación de Cariblantic Realty Corporation, de manos

de los co-demandantes Herbert S. Werner y Robert Berk la suma de $135,000 y pagar la misma a los esposos Marcantoni Massanet; a tomar posesión de las propiedades así adquiridas, todo sujeto a ulteriores órdenes del Tribunal, en el entendido que dichas propiedades permanecerían en *custodia legis* sujetas a cualquier ulterior determinación que tuviera a bien hacer ese Tribunal con respecto a las mismas.

La orden de sindicatura tiene además dos disposiciones adicionales: (1) "Se dispone expresamente, que de negarse los co-demandados Mario Marcantoni y Gladys Massanet de Marcantoni a efectuar el traspaso de las propiedades en cuestión, en la forma anteriormente dispuesta, entonces dicho traspaso será efectuado en la fecha, hora y sitio que designe el síndico, por el Alguacil de este Tribunal, quien por la presente queda facultado para efectuar el mismo a nombre y representación de los vendedores Mario Marcantoni y su esposa Gladys Massanet de Marcantoni, todo ello de acuerdo con los términos, cláusulas, pactos y condiciones del contrato de compraventa. (2) Se dispone expresamente que el traspaso de las propiedades a nombre de Cariblantic Realty Corporation que por la presente se ordena, está sujeto a cualquier derecho que pueda establecer ante el Tribunal, cualquier tercera persona que hubiere adquirido válidamente, por cesión de Cariblantic Realty Corporation, de los derechos de ésta con respecto al contrato de Promesa de Compraventa de 31 de octubre de 1963. De determinarse por este Tribunal, después de oir a las partes, que alguna tercera persona adquirió los derechos de la Cariblantic Realty Corporation en el referido contrato de Promesa de Compraventa, entonces el Tribunal le ordenará al síndico que traspase dichas propiedades a tercera persona y se tomarán por el Tribunal, aquellas medidas adicionales que sean procedentes en derecho, para la protección de las partes y la resolución final del caso."

Habiéndose negado el señor Marcantoni y su señora esposa a realizar el cierre de negocio solicitado y el traspaso

de las propiedades, procedió el Alguacil del Tribunal Superior de Puerto Rico, Sala de San Juan, a realizar dicho traspaso, a nombre de los esposos Marcantoni Massanet, a favor de la Cariblantic Realty Corporation, según escritura pública número cinco de veinticuatro de abril de 1964 ante el Notario don Ramón Morán Loubriel.

El día 27 de abril de 1964, el co-demandado William Freeman, aquí peticionario, radicó ante este Tribunal, un recurso de *certiorari* contra la resolución de 21 de abril de 1964 decretando la sindicatura, por los siguientes fundamentos: (1) porque dicha resolución fue dictada sin habérsele dado oportunidad al demandante de presentar prueba; (2) porque el nombramiento de un síndico es erróneo por cuanto el peticionario tenía y tiene otro remedio adecuado en Ley; (3) porque no se probó la posibilidad de que los demandantes resultaran airosos en su demanda; (4) porque dicha resolución es errónea en cuanto le ordena al síndico tomar posesión de una propiedad, cuyo título o posesión no está en controversia en la demanda radicada por los demandantes.

1—Después de expedido el recurso, y examinada detenidamente toda la cuestión procesal, según la misma aparece de los autos de la ilustrada Sala sentenciadora, estamos conforme que el decretar una sindicatura para llevar a cabo ciertas actuaciones difíciles de resolver dentro del plazo perentorio concedido por el contrato de 31 de octubre de 1963, era una de las formas razonables de proteger los derechos de las tres partes que intervenían en esta cuestión. No tenemos los antecedentes necesarios para resolver sobre la negativa del Juez a recibir prueba antes de decretar la sindicatura. Como cuestión de realidad, cuando el día 20 de abril de 1964 se oyó a las partes sobre la conveniencia de dicha sindicatura, ya el co-demandado Freeman le había informado al Tribunal en su contestación radicada el 8 de abril de 1964, que con fecha 13 de marzo de 1964 y en la ciudad de Nueva York, había transferido mediante endoso al señor Fredic

Gould, los derechos que pudiera tener en la opción o compromiso de compraventa.

2–3—Es cierto que el nombramiento de un síndico, dentro de una solicitud de aseguramiento de sentencia, es siempre una medida que debe estudiarse con especial cuidado, sobre todo en cuanto al daño que tal medida pueda causar al interés adverso: *Ramírez* v. *Corte*, 64 D.P.R. 530 (De Jesús) (1945) cita precisa a las págs. 537–540. No obstante, cuando las circunstancias indican que cierto estado de hecho o de derecho favorable a todas las partes envueltas, puede conseguirse mediante el traslado de autoridad y dirección de un negocio que crea una sindicatura, tal medida queda a disposición de la discreción judicial. El hecho que en el contrato del 31 de octubre de 1963, aparezca el co-demandante Herbert S. Werner como único agente de la Corporación Cariblantic Realty, permite la inferencia que los demandantes pueden salir airosos en su pretensión de ser declarados únicas partes con interés, en cuanto a los derechos originados en el compromiso de compraventa de fecha 31 de octubre de 1963.

4—El derecho a ejercitar la opción en la forma convenida en el contrato del 31 de octubre de 1963, es en sí mismo, una controversia sobre un derecho propietario, de carácter real aunque sujeto, en cuanto a su consumación, a una previa declaración judicial. La medida adoptada por la ilustrada Sala sentenciadora, está correctamente inspirada en el fin, de conservar el derecho de propiedad disponible mientras dure la controversia, sobre quiénes son las verdaderas partes con interés como accionistas, promotores o agentes de la corporación.

Debía anularse el auto expedido el 27 de abril de 1964 y dejarse sin efecto la orden dictada en auxilio de nuestra jurisdicción.